YOUNG FEHLHABER PILE Co., INC., Respondent, v. THE STATE OF NEW YORK, Appellant.*

(Claim No. 25028.)

Third Department, November 11, 1942.

---

* Affg. 177 Misc. Rep. 204.

*John J. Bennett, Jr., Attorney-General (James H. Glavin, Jr.,* and *Joseph I. Butler* of counsel), for appellant.

*Louis Rosenberg* and *Irwin H. Rosenberg* for respondent.

BLISS, J. The claimant has been awarded judgment for additional labor and materials furnished in its cofferdam work because the elevations of the creek bottom at the site of the work were substantially lower than the elevations specifically indicated by the State upon the plans and for moneys improperly deducted by the State from the respondent's final estimate for the State's engineering supervision during the period for which construction was delayed beyond the date fixed by the contract.

The contract called for reconstruction of Merrick road on Long Island and where the highway crossed Carll creek included the removal of two existing bridges and an intervening roadway and erection in their place of a single concrete bridge. Included also was the removal of an existing town dock and erection of a new concrete dock in its stead immediately adjacent to the new concrete bridge. Carll creek at the point in question was a navigable stream over 150 feet wide. Under the contract the new construction had to be poured in the dry and in order to accomplish this a cofferdam had to be erected across Carll creek on

both sides of the work and the area between dewatered. Upon the contract plans the State had noted the elevations of the creek bottom at the site of the operation through the medium of contour lines appearing at one foot intervals with numerals placed thereon. When construction started, however, and the contractor checked these underwater elevations of the creek bottom, it was found that the bottom was actually as much as four feet, six inches lower than shown upon the plans. This additional depth of the creek bottom greatly increased the cost of construction and the damages here awarded are principally for such increased cost.

Upon the trial it was shown that the plans had been prepared in 1936 for bidding in 1936 and that the underwater elevations depicted upon them were based on a survey made by the State in 1930. In the intervening six years the creek bottom had been dredged by the village of Babylon, of which the State had full knowledge but as to which it kept silent. Thus there was a clear case of fraud and misrepresentation on the part of the State. In its attempt to escape liability, the State relies upon certain provisions of its specifications for the reconstruction of bridges adopted in 1935, its instructions to bidders and a provision in the contract. The bridge reconstruction specifications which apparently applied to all State contracts provided that excavation lines and bases of structures should be considered as only approximate, that cofferdams should be constructed and kept dry "irrespective of any depth to which the excavation may be ordered to be carried." The instructions to bidders debarred a contractor "from pleading misunderstanding or deception because of estimates of quantities, character, location or other conditions surrounding the same." The contract itself contained a provision whereby the contractor agreed that he was fully informed regarding all conditions affecting the work, that his information was secured by personal investigation and that he would make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State.

The State should not be thus permitted by general provisions in its specifications, instructions or contract from escaping liability for its direct and patent misrepresentations. The bidder could properly rely upon the clear and unequivocal information contained in the plans, otherwise they would serve no useful purpose. They should reasonably depict the work to be done and where they are definite and plain the contractor is entitled to rely upon them. The positive representations of the plans which

refer only to the particular work involved, take precedence over specifications applicable to all contracts or the general terms of a uniform contract form. Here there was clear misrepresentation by the State. In the instant case the State must accept full responsibility for the falsity of its plans, for it is clear that it had ample knowledge that its contour lines were inaccurate. That the contours were very important is established by the amount of damage incurred by the contractor through their incorrectness.

"A party to a contract cannot, by misrepresentation of a material fact, induce the other party to the contract to enter ino it to his damage and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided. If it could be the implied covenant of good faith and fair dealing existing in every contract would cease to exist." (*Jackson* v. *State of New York,* 210 App. Div. 115, 119; affd., on opinion below 241 N. Y. 563.)

Point is made by the State that the contractor failed to adequately inform himself as to the correct elevations of the creek bottom. However, the physical conditions and failure of the State to allow sufficient time therefor prevented this.

The judgment should be affirmed with costs.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

Judgment affirmed, with costs.