**Edward M. CONK, Plaintiff,**

v.

**RICHARDS & O'NEIL, LLP, Floyd Wittlin and Robert Leonard, Defendants.**

**No. IP–99–0922–C H/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 8, 1999.

B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, IN, for Plaintiff.

Brian W. Welch, Amie Peele Carter, McHale Cook & Welch, Indianapolis, IN, for Defendants.

## ENTRY REMANDING ACTION
## TO STATE COURT

HAMILTON, District Judge.

The central issue in this case is whether the presence of an Indiana citizen as a defendant in this diversity action properly defeats removal from state court or whether removal was proper because the Indiana citizen was fraudulently joined as a defendant. The case also presents issues concerning whether a court may consider factual assertions outside the pleadings in deciding a question of fraudulent joinder, as well as when joinder of arguably separate and independent claims against different defendants may amount to fraudulent joinder.

This case is the latest chapter in serial litigation arising from the sale of Day Dream, Inc., an Indianapolis publishing company, to Cullman Ventures, Inc. (CVI) based in New York. The transaction was

structured so that all Day Dream shareholders sold all their shares to CVI. Before the sale, plaintiff Edward M. Conk and members of his family owned a majority of Day Dream shares. Defendant Robert Leonard was the chief financial officer of Day Dream during the relevant time. Defendant Richards & O'Neil, a law firm with its principal office in New York, represented CVI in its purchase of Day Dream stock. Richards & O'Neil provided Conk and the other selling shareholders with an opinion letter signed by defendant Wittlin.

Conk filed this action in the Marion Superior Court in Marion County, Indiana, asserting various claims arising out of the Day Dream sale. Defendants filed a verified petition pursuant to 28 U.S.C. §§ 1441 and 1446 removing the action to this court. Conk has moved to remand this action to the state court. Conk argues that removal was improper because Leonard is a citizen of Indiana. Citizens of the forum state cannot remove cases based on diversity jurisdiction. See 28 U.S.C. § 1441(b). Defendants object to remand. They argue that Conk fraudulently joined or misjoined Leonard as a defendant to defeat removal. In response, Conk has submitted an affidavit containing factual assertions in support of his remand motion. Defendants have moved to strike the affidavit. Defendants have also moved to dismiss Conk's complaint for failure to state a claim upon which relief can be granted.

As explained below, the court finds that Leonard has not been fraudulently joined in this action. In making this decision, the court has considered the challenged affidavit from Conk because Conk is entitled to elaborate on the allegations in the complaint to show that the alleged claims are sufficiently viable to defeat removal.

In essence, the issue here is not whether Conk has stated a claim against Leonard upon which relief can be granted. The question is whether there is any reasonable possibility that a state court might rule against Leonard when all fairly disputable issues of both fact and law are resolved in Conk's favor. See *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). Thus, even if a state court might ultimately find that Conk has failed to state a claim against Leonard, joinder of the claim against Leonard is not "fraudulent" for purposes of this court's jurisdiction so long as the issue of state law is subject to reasonable argument on both sides. See *Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 853 (3d Cir.1992) (if "intricate analysis of state law" is needed to dismiss claim, the claim may not be disregarded for purposes of diversity jurisdiction). Under this standard, Leonard was not fraudulently joined in this case. In addition, because Conk's claims against Leonard are sufficiently related to his claims against the other defendants, his claims against Leonard were not misjoined. As a result, the entire action must be remanded to state court. Because the court does not have subject matter jurisdiction, the court therefore may not and does not address the defendants' motions to dismiss.

### Background

Defendants contend the court can decide the issues of fraudulent joinder, misjoinder, and dismissal without considering evidence from the defendants. For purposes of the pending motions, therefore, the court takes as true the facts alleged by plaintiff Conk in his complaint and in his affidavit. (The court's reasons for denying defendants' motion to strike Conk's affidavit are explained below.) Based on this standard, the following facts and allegations are most relevant to Conk's motion to remand.

Plaintiff Edward Conk owned common stock in Day Dream. Cplt. ¶ 1. On April 11, 1997, Conk and the other shareholders sold their Day Dream stock to CVI for approximately $29 million. Cplt. ¶ 4; Conk Aff. ¶ 4. This sale was memorialized in a Stock Purchase Agreement between the Day Dream shareholders and CVI. At all relevant times, defendant Leonard was the chief financial officer of Day Dream.

Cplt. ¶ 2. Leonard's duties included preparing Day Dream's tax returns, accounting for inventory, accounting for accounts receivable, and otherwise directing and overseeing that all Day Dream accounting procedures were done properly according to generally accepted accounting principles. Cplt. ¶ 18.

Conk alleges that Leonard had additional duties in connection with the sale of Day Dream to CVI, "including, but not limited to, preparing and/or reviewing all financial statements, accounting documents and tax papers (the 'Accounting Records') provided by Day Dream to CVI, and further communicating with CVI as to the accounting procedures used by Day Dream." Cplt. ¶ 19.

After the stock sale closed, CVI filed claims against Conk and the other sellers alleging problems and misrepresentations related to the accounting records prepared by Leonard. Cplt. ¶ 26. CVI pursued its claims in arbitration. Conk and other former shareholders attempted to avoid the arbitration proceeding by filing an earlier state court action. That action was also removed to this district, where Judge McKinney dismissed it. See *Conk v. Cullman Ventures, Inc.*, 191 F.3d 455, 1999 WL 527895 (7th Cir.1999) (unpublished order affirming dismissal).[1]

Conk alleges that Leonard had represented to him that "the Accounting Records were properly prepared and that all other duties required of him as President of Day Dream in relation to the March CVI sale were done with the appropriate degree of skill." Cplt. ¶ 23. Because Conk was in Texas at the time of the sale and had not been a member of Day Dream's Board of Directors for several months, Conk asserts that he "particularly relied upon Leonard's representations." Conk Aff. ¶¶ 8, 10.

Before CVI bought all Day Dream shares, Leonard held options to purchase Day Dream shares. As part of the CVI deal, Conk and the other selling shareholders entered into a side agreement with Leonard in which Leonard agreed to surrender these options in exchange for a $1.6 million cash payment. Cplt. ¶ 22. Conk maintains that Leonard received the payment as a result of the stock sale. Conk Aff. ¶ 16. In addition to other compensatory damages, Conk seeks return of the $1.6 million payment and refund of the money paid to Leonard for his professional services.

Defendant Richards & O'Neil is a law firm that served as legal counsel to CVI in its purchase of Day Dream stock. See Cplt. ¶ 5 & Ex. A. Richards & O'Neil provided to Conk and the other selling shareholders an opinion letter signed by Wittlin assuring that the Stock Purchase Agreement was valid and enforceable against CVI. Cplt. ¶¶ 6–9 & Ex. A. A key provision of the Stock Purchase Agreement was a clause "capping sellers' liability for misrepresentation or breach of representations or warranties concerning Day Dream's financial condition to a three million dollar amount set aside from the purchase price of the company." Cplt. ¶ 10. After the sale, however, when CVI asserted claims against Conk and other shareholders in arbitration, CVI and Richards & O'Neil persuaded the arbitrator that this provision was not enforceable to cap the selling shareholders' liability. Conk alleges that Richards & O'Neil and Wittlin breached their duties to him (a) by failing to disclose the substantial risk that this cap provision would be held invalid as to certain liabilities and (b) by "attempting to establish on behalf of CVI that those provisions were invalid." Cplt. ¶ 13. Additional facts are noted as necessary below, always treating Conk's version of events as true for purposes of the pending motions.

*Discussion*

In general, a defendant in a civil action brought in a state court may remove the action to a district court of the United States if the district court would have orig-

---

1. The court cites this unpublished order not as legal authority but as part of the factual background of this litigation. See Seventh Circuit Rule 53(b)(2)(iv).

inal jurisdiction over the action. 28 U.S.C. § 1441(a). Defendants here argue that the court has original jurisdiction under 28 U.S.C. § 1332, which provides that a civil action must involve a matter in controversy exceeding $75,000, exclusive of costs and interest, and must be between citizens of different states. The requirements for the amount in controversy and complete diversity of citizenship are both satisfied here. Plaintiff Conk is a citizen of Texas. Defendant Leonard is a citizen of Indiana, and Wittlin is a citizen of New York. Richards & O'Neil is a limited liability partnership organized under the laws of New York and has its principal place of business in New York. All Richards & O'Neil partners are citizens of New York, Connecticut, or New Jersey. See *Carden v. Arkoma Associates*, 494 U.S. 185, 192–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (limited partnership is treated as citizen of all states of which any partner is a citizen).

The United States Constitution provides for diversity jurisdiction to protect out-of-state defendants from possible bias of state courts in favor of their own citizens. Removal by a citizen of the forum state therefore would not serve the purpose of diversity jurisdiction. Thus, where removal is based on diversity of citizenship, 28 U.S.C. § 1441(b) permits removal "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Because Leonard is a citizen of Indiana, Conk asserts that § 1441(b) prohibited the removal so that this action must be remanded to state court. In response, defendants maintain that the court should disregard Leonard's Indiana citizenship because Conk fraudulently joined or misjoined Leonard in this action, apparently to prevent Richards & O'Neil and Wittlin from removing the claims against them to federal court. Removal would be proper if the court disregarded Leonard as a party.

## I. *Fraudulent Joinder*

██ "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or there has been an outright fraud in plaintiff's pleading of jurisdictional facts." *Hoosier Energy Rural Elec. Co-op, Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir.1994), quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993). Defendants make no suggestion of "outright fraud" in pleading facts relating to jurisdiction. Instead, defendants contend that Conk has not alleged a viable cause of action against Leonard.

To show fraudulent joinder, defendants must shoulder a heavy burden. They must show that "after resolving issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods*, 959 F.2d at 73 (emphasis in original); accord, *Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 654–55 (7th Cir.1992) (defendant must show "there is no possibility" that plaintiff could establish claim against in-state defendant). Federal courts "must engage in an act of prediction: is there any reasonable possibility" that a state court would rule against the in-state defendant? See *Poulos*, 959 F.2d at 73.

Defendants argue that the court should apply the same standard in deciding fraudulent joinder that the court would apply to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. There is an important difference between the standards. The Third Circuit has explained:

> the inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.

*Batoff v. State Farm Insurance*, 977 F.2d at 852. "A claim which can be dismissed

only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Id.* at 853.

■ Thus, for purposes of deciding the issue of fraudulent joinder, the standard applied to Conk's state law claims against Leonard is essentially as generous as the one the court would apply if a defendant moved to dismiss a case for lack of federal question subject matter jurisdiction on the theory that the only claim arising under federal law was "wholly insubstantial and frivolous." See *Batoff,* 977 F.2d at 852, quoting *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (explaining that failure to state a claim upon which relief can be granted calls for dismissal on the merits, not dismissal for lack of jurisdiction). The Supreme Court reaffirmed this distinction between dismissal for failing to state a claim and dismissal for lack of subject matter jurisdiction in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The Court said it is "firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case." *Id.* at 89, 118 S.Ct. 1003. Thus, it is quite possible that a claim may establish federal jurisdiction (or, as in this case, the lack of such jurisdiction) but still be dismissed for failure to state a claim upon which relief can be granted. *Id.;* accord, *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 143 (7th Cir.1996).

### A. Defendants' Motion to Strike Conk's Affidavit

Before applying the legal standard for fraudulent joinder, the court must consider first a dispute over which materials it may consider in deciding the issue. Conk has submitted an affidavit in support of his motion to remand. Defendants have moved to strike the affidavit, arguing that a court determining a question of fraudulent joinder may look only to the facts alleged in the complaint and may not consider the factual assertions in affidavits.

■ The motion to strike presents a superficial conflict between two lines of authority relevant to contested removals and to motions to dismiss for failure to state a claim. As explained below, the court concludes that when a defendant asserts fraudulent joinder based on the plaintiff's failure to plead a viable claim against the defendant whose presence defeats removal, the court may consider the plaintiff's factual assertions (whether in a brief, an affidavit, or in some other form), that elaborate on the allegations of the complaint, so long as those factual assertions are not inconsistent with the allegations of the complaint. That is, the plaintiff has at least as much latitude in responding to such a claim of fraudulent joinder as he would have in responding to a motion to dismiss for failure to state a claim.

To begin with, as a general rule a district court facing a challenge to its subject matter jurisdiction has some discretion in deciding how to address relevant factual disputes. See generally *Karazanos v. Madison Two Associates,* 147 F.3d 624, 626 (7th Cir.1998); *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993) (per curiam). For example, if there is a dispute over actual citizenship of a party, the court may hear evidence and make findings of fact. See, *e.g., Amgen, Inc. v. Kidney Center of Delaware County, Ltd.,* 95 F.3d 562, 567–68 (7th Cir.1996) (ordering district court to make findings on parties' citizenship); *Appelt v. Whitty,* 286 F.2d 135, 136 (7th Cir.1961) (district court could make findings on disputed jurisdictional facts). If there is a question about the amount in controversy requirement in a diversity case, the district court may and sometimes must conduct a preliminary inquiry into the relevant circumstances, such as the extent of the plaintiffs' losses, see *Harmon v. OKI Systems,* 902 F.Supp. 176, 178–79 (S.D.Ind.1995), *aff'd,* 115 F.3d 477 (7th Cir.1997), or whether a contract might

certainly limit damages so as to keep them under the jurisdictional threshold, as in *Pratt Central Park Ltd. Partnership v. Dames & Moore, Inc.*, 60 F.3d 350, 351–52 (7th Cir.1995). The challenge, however, is to keep such a preliminary inquiry from becoming a "doppelganger of the inquiry on the merits." *Id.* at 351.

Where the jurisdictional challenge turns on the issue of alleged fraudulent joinder, the appropriate procedure depends on the parties' specific contentions. If one party contends the other has committed outright fraud in pleading facts relevant to jurisdiction, the court may need to conduct a factual inquiry. Similarly, if the claim against the defendant whose presence defeats removal is plainly subject to a winning affirmative defense of which the plaintiff must have been aware, such as a statute of limitations, accord and satisfaction, or *res judicata*, the defendants should be permitted to offer evidence outside the pleadings to prove fraudulent joinder. In the more common cases like this one, however, where the defense contends the plaintiff has simply failed to assert a viable claim against a defendant whose presence as a proper party would defeat jurisdiction, the court may not indulge in factual inquiry. Instead, the court must give the party asserting the claim the benefit of the doubt on all questions of both fact and law. *Poulos v. Naas Foods*, 959 F.2d at 73.

To block consideration of Conk's affidavit, defendants rely on *Lynch Ford, Inc. v. Ford Motor Co.*, 934 F.Supp. 1005 (N.D.Ill. 1996). The plaintiff in *Lynch Ford* alleged only state law claims in its complaint filed in the Illinois state courts. One defendant was a citizen of another state and removed the case to federal court on the basis of diversity, claiming that plaintiff had fraudulently joined two Illinois defendants in an effort to destroy complete diversity. The complaint had not alleged any wrongful conduct on the part of the Illinois defendants beyond the conclusory allegation that they had conspired with the out-of-state defendant. *Id.* at 1006–07. The plaintiff moved to remand the case to state court, alleging additional facts not con-

tained in the complaint and not described in the court's opinion. In refusing to consider any facts outside the complaint, the court explained:

> Considering Lynch's additional allegations—which are nowhere to be found in the complaint—would conflict with the "legal maxim that jurisdiction depends on the situation at the time of removal, and that once a case is successfully removed, a plaintiff cannot do anything to defeat federal jurisdiction and force a remand."

*Id.* at 1007, quoting *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 367 (7th Cir.1993) (internal and other citations omitted).

To support its decision on this point, the *Lynch Ford* court relied on the Seventh Circuit's opinions in *Shaw v. Dow Brands* and *Poulos v. Naas Foods*, as well as the Third Circuit's opinion in *Batoff v. State Farm Insurance*. This court has no quarrel with the result of *Lynch Ford*, especially without knowing what additional facts were offered to support any claims against the Illinois defendants. In this court's view, however, the cases cited in *Lynch Ford* do not prohibit a plaintiff charged with fraudulent joinder from elaborating upon the factual allegations in the complaint, just as a plaintiff may in opposing a motion to dismiss for failure to state a claim upon which relief can be granted.

The Seventh Circuit has often reminded district courts that a plaintiff may plead a conclusion in the complaint and then, if the conclusion is questioned in a motion to dismiss, may suggest a set of facts consistent with the allegations which, if proven, would establish the right to recover on the legal claim. *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 78–79 (7th Cir. 1992); accord, *e.g.*, *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994) (considering factual arguments in appellate briefs, but affirming dismissal on other grounds); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 728 (7th Cir.1986) (reversing dismissal and considering exhibits attached to

plaintiffs' appellate brief as elaboration of allegations in complaint); *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir.1985) (reversing dismissal; plaintiff was free to give appellate court an "unsubstantiated version" of the relevant events that was "not inconsistent with the allegations of the complaint;" "It can make no difference that he went further and (unnecessarily) tried to prove some of those allegations in the appendix to his brief. The materials in his appendix have no standing as evidence but are usable to show how the accident might have happened."). This flexibility is especially appropriate in evaluating fraudulent joinder claims based on state court filings. After all, Conk's complaint in this case was not even subject to the Federal Rules of Civil Procedure when he filed it.

Turning to the cases cited on this issue in *Lynch Ford*, in *Shaw v. Dow Brands* the Seventh Circuit held that a diversity case had been properly removed even though the plaintiff argued that the required minimum amount in controversy for a diversity case had not been met. 994 F.2d at 366. The defendant had removed based on a good faith belief that the amount in controversy was satisfied. The Seventh Circuit held that the plaintiff had conceded the point by failing to dispute it before oral argument on appeal. See *id.* at 367–68. In refusing to consider factual assertions outside the complaint, the *Lynch Ford* court relied on a portion of the *Shaw* opinion explaining that a plaintiff cannot defeat removal by filing a stipulation after removal disclaiming any interest in recovering more than the jurisdictional minimum. *Id.* at 367, citing *In re Shell Oil Co.*, 966 F.2d 1130, 1131–32 (7th Cir.1992). "Stipulation is problematic because it conflicts with a legal maxim that jurisdiction depends on the situation at the time of removal." *Id.*, citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938). See also, *e.g.*, *In re Shell Oil Co.*, 970 F.2d at 356 (7th Cir.1992) (plaintiffs' post-removal stipulation disclaiming amount in controversy did not defeat removal); *Reason v.*

*General Motors Corp.*, 896 F.Supp. 829, 833 (S.D.Ind.1995) (holding that plaintiffs could not defeat removal by claiming in post-removal affidavit that they were seeking less than the jurisdictional amount, but remanding because defendant failed to meet its burden of presenting evidence that the amount in controversy was satisfied).

That general principle, of course, does not prohibit the parties contesting a motion to remand from submitting evidence to the court about the situation that existed *at the time of the removal.* The parties are free to submit evidence (outside the pleadings) related to their citizenship at the time of removal, and they may submit evidence relevant to the amount in controversy at the time of the removal. This court explained this point in *Harmon v. OKI Systems, supra,* 902 F.Supp. at 178. In *Harmon* this court denied remand in a diversity case. The court based its decision on evidence that was submitted after removal, but which showed that the amount in controversy at the time of removal was easily satisfied. By that time, the evidence showed, the plaintiff's lost wages and medical expenses each had already exceeded the amount in controversy requirement. *Id.* at 178–79. For these reasons, the principles stated in *Shaw v. Dow Brands* do not bar plaintiff from submitting his affidavit in support of his motion to remand.

The *Lynch Ford* court also cited *Poulos v. Naas Foods,* where the Seventh Circuit addressed a plaintiff's effort to avoid a finding of fraudulent joinder. See 959 F.2d at 73–74. The Seventh Circuit was not impressed by the plaintiff's argument that "some set of facts might turn up to support a claim" against the in-state defendant:

Although Naas bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that Poulos might allege in the future: only his present allegations count. [*Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964).] If Poulos' theory were right, he could defeat diversity jur-

isdiction by joining his grandmother as a defendant—surely *some* set of facts might make her liable.

*Id.* at 74. This conclusion about disregarding unpleaded claims is obviously correct, but it does not extend so far as to prohibit a plaintiff from elaborating on the claims he has actually tried to plead.

In *Batoff v. State Farm*, also cited in *Lynch Ford* on this issue, the Third Circuit explained the analysis in deciding a claim of fraudulent joinder:

> In evaluating the alleged fraud, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint." [*Steel Valley Authority v. Union Switch & Signal Division*, 809 F.2d 1006, 1010 (3d Cir.1987) (citation omitted).] It also must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." [*Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990).]

977 F.2d at 851–52. Again, saying that the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed" falls short of prohibiting a plaintiff from elaborating on the claims actually asserted in the complaint.

Other district courts in this circuit have recognized that a court evaluating a claim of fraudulent joinder may look to factual assertions beyond those alleged in a plaintiff's complaint. See, *e.g., Veugeler v. General Motors Corp.*, No. 96 C 7278, 1997 WL 160749, at *2 (N.D.Ill. April 2, 1997) (denying remand based in part on affidavit showing in-state defendant had no involvement in the dispute: "In conducting the required review, the Court is not limited by the allegations of the parties' pleadings but may 'pierce the pleadings' and consider 'summary judgment-type evidence such as affidavits and deposition testimony' in determining whether fraudulent joinder has occurred."); *Peters v. AMR Corp.*, No. 95 C 588, 1995 WL 358843, at *3–4 (N.D.Ill. June 13, 1995) (recognizing that

"a limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case," and remanding case to state court because defendants' affidavits addressed "substantive facts" and not "jurisdictional facts"); *Hoosier Energy Rural Electric Cooperative, Inc. v. Amoco Tax Leasing IV Corp.*, No. IP 89–816–C, 1992 WL 684355, at *1 (S.D.Ind. March 17, 1992) (denying remand because joinder was fraudulent, but recognizing that when a court is faced with a fraudulent joinder claim, the court may "pierce the pleadings and consider the entire record"), *aff'd*, 34 F.3d 1310, 1315–16 (7th Cir.1994); accord, *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997) (district court could consider affidavits and deposition transcripts in deciding fraudulent joinder issue); *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990) (same); *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981) (same, comparing procedure to summary judgment, but noting that party opposing removal is entitled to benefit of doubt on disputed issues of state law).

Where a defendant asserts fraudulent joinder based on the plaintiff's failure to state a claim upon which relief could be granted against a defendant whose presence defeats removal, this court sees no reason why the plaintiff should not be entitled to elaborate upon the pleadings. Most instructive here is the Seventh Circuit's approach to motions to dismiss under Rule 12(b)(6). A defendant is entitled to dismissal of a claim only if it is clear that plaintiff would not be entitled to relief *under any set of facts* that might be proven within the scope of the complaint's allegations. *E.g., Chaney v. Suburban Bus Div. of Regional Transp.*, 52 F.3d 623, 626–27 (7th Cir.1995). And as noted above, a plaintiff may plead a conclusion in the complaint and then, if the conclusion is questioned in a motion to dismiss, may suggest a set of facts consistent with the allegations which, if proven, would establish the right to recover on the legal claim. See, *e.g., Early v. Bankers Life and Casualty Co.*, 959 F.2d at 78–79. Thus, a plain-

tiff is entitled to respond to a motion to dismiss with new factual assertions that are consistent with (or at least do not contradict) his complaint.

In response to defendants' claim of fraudulent joinder, Conk has submitted an affidavit containing factual assertions that are consistent with and elaborate upon the allegations in his complaint. In light of the defendants' arguments on fraudulent joinder and the Seventh Circuit's directive to consider facts asserted outside a complaint in addressing a motion to dismiss, the court may consider Conk's affidavit in ruling on his remand motion. Defendants' motion to strike is therefore denied.

### B. *The Merits of Conk's Claims Against Leonard*

Conk's claims against Leonard include breach of contract, professional negligence, constructive fraud, breach of fiduciary duty to the shareholders of a closely held corporation, and violation of the Indiana Securities Act. Cplt. ¶ 30. Defendants have raised three principal arguments to defeat Conk's claims. First, they contend that Conk released all of the alleged claims against Leonard (other than the alleged violation of the Indiana Securities Act) through a release clause in the Stock Purchase Agreement. Second, they contend that all of Conk's claims against Leonard must be raised, if at all, in a shareholder derivative action. Third, they contend that Conk's claim under the Indiana Securities Act fails because Leonard is not a "person liable" under the Act and because Conk is not a person to whom Leonard could be liable in any event.

### 1. *The Effect of the Release on Claims Against Leonard*

■ The Stock Purchase Agreement for the sale of all Day Dream shares to CVI contains a clause that provides:

> For good and valuable consideration, receipt of which is hereby acknowledged, each Seller as a Seller and, if applicable, as a resigning officer or director of the Company or its Subsidiaries as described in *Section 5.13* (for purposes of this Article XX, a "Releasor"), hereby releases and forever discharges the Company [Day Dream] and its Subsidiaries (for purposes of this Article XX, the "Released Parties") and their respective Article XX Affiliates (as defined below), absolutely and forever, of and from any and all direct or indirect liabilities, claims losses, damages, costs, expenses, deficiencies, obligations, responsibilities, demands, benefits, accounts, liens, rights of action, claims for relief, and causes of action, of every nature and kind whatsoever, in law and in equity, known or unknown, fixed or unfixed, choate or inchoate, liquidated or unliquidated, secured or unsecured, accrued, absolute, contingent or otherwise ("Claims"), which the Releasor and its Article XX Affiliates had, have, or may have against any Released Party and/or its Article XX Affiliates, for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Closing Date.

Stock Purchase Agreement, Article XX at 57. "Affiliate" in the clause is defined to include:

> all past and present (on the date hereof and as of the Closing Date) subsidiaries, divisions, parent companies, affiliated and/or commonly controlled corporations, companies, and enterprises, joint ventures, and projects, and all past and present (on the date hereof and as of the Closing Date) *officers, directors,* trustees, employees, representatives, agents and attorneys thereof, and the successors, assigns, heirs, executors and administrators of each of them.

*Id.* (emphasis added).[2]

Conk concedes that Leonard, as an officer of Day Dream, falls within the defini-

---

2. Defendants have not submitted evidence in support of their arguments, but have submitted a copy of the Stock Purchase Agreement.

Notwithstanding defendants' objections to consideration of Conk's affidavit, defendants

tion of an "affiliate" of Day Dream and is therefore covered by the scope of the release. Conk argues, however, that the release is invalid as to Leonard because Leonard cannot insulate himself from liability for his own fraud. Conk relies on the Second Circuit's decision in *Turkish v. Kasenetz*, 27 F.3d 23 (2d Cir.1994) (reversing district court's finding that plaintiff had failed to allege a pattern of racketeering activity under the civil RICO statute, 18 U.S.C. § 1961). In that case, the Second Circuit refused to uphold a provision in a settlement agreement limiting the liability of the parties. *Id.* at 27. The plaintiffs alleged that the defendants had fraudulently induced them to enter into the agreement by falsely representing that their accountants had examined the records of the business and had determined that certain loans had been repaid. *Id.* at 26–27. The defendants responded that a limitation of liability provision in the settlement agreement limited plaintiffs to the sole remedy contained in the provision. In refusing to uphold the liability limitation, the Second Circuit cited the principle of law that a party cannot use a contractual limitation of liability to insulate himself from his own fraudulent conduct. *Id.* at 27–28. The court then explained: "the rationale behind the doctrine—to prevent parties from shielding themselves from liability for their own fraud by inserting a clause into the very contract procured by fraud—applies equally to the limitation of liability and to the exclusion of liability." *Id.* at 28, citing *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 555 (1941) ("Attempts under the form of contract to secure total or partial immunity from liability for fraud are all under the ban of law.") (citation omitted).

Defendants argue that *Turkish* is distinguishable. The plaintiff in *Turkish* accused the defendant, a party to the settlement agreement, of fraudulently inducing the plaintiff to enter the settlement agreement. Here, Leonard himself was not an actual party to the Stock Purchase Agreement between Conk and the other shareholders and CVI. He was only a third party beneficiary of the release provision in the Agreement. Defendants therefore contend that "Leonard did not and could not induce Conk to sign the Stock Purchase Agreement." Def. Mem. at 4.

Defendants appear to be arguing that because Leonard was not a party to the contract between Conk and other Day Dream shareholders and CVI, any fraud perpetrated by Leonard cannot be the basis for refusing to enforce the contract provision limiting his liability. New York law, which governs the Stock Purchase Agreement, does not permit a party to a contract to avoid his contractual duties by arguing that he was fraudulently induced to enter the contract by the misrepresentations of a non-party. See *National Union Fire Insurance Co. of Pittsburgh v. Worley*, 257 A.D.2d 228, 690 N.Y.S.2d 57, 61 (N.Y.App.Div.1999) ("[T]he person making the representations must be, or acting on behalf of, the other party to the contract. Fraud by a third party is not effective to vitiate contractual obligations."). Thus, Conk could not avoid his duties to CVI under the Stock Purchase Agreement by arguing that Leonard (a third party) fraudulently induced him to enter the agreement.

However, Conk is not trying here to avoid his duties to CVI under the Agreement. Rather, Conk is arguing that Leonard should not be permitted to benefit from a release provision procured through Leonard's own fraud. Courts applying New York state law have generally refused to allow a party to a contract to insulate himself from his own fraud. See, *e.g.*, *TBG, Inc. v. Bendis*, 845 F.Supp. 1459, 1462–63 (D.Kan.1994) (applying New York law and refusing to allow provision in

point out correctly that in moving under Rule 12(b)(6) to dismiss for failure to state a claim, they may submit and rely on documents (like the Stock Purchase Agreement) that are identified in the complaint and that are central to the plaintiff's claims. See *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

a stock purchase agreement to shelter sellers from liability for their fraudulent acts); *Laudisio v. Amoco Oil Co.,* 108 Misc.2d 245, 437 N.Y.S.2d 502, 505 (1981) (refusing to allow a party to insulate himself from claims based on misrepresentation, fraud, and bad faith); *Young Fehlhaber Pile Co. v. State,* 265 A.D. 61, 37 N.Y.S.2d 928, 930 (N.Y.App.Div.1942) (same). New York's highest state court has explained:

> "there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may nevertheless contract with him, in the very instrument by means of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it, and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice."

*Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906, 909 (1957), quoting *Bridger v. Goldsmith,* 143 N.Y. 424, 38 N.E. 458, 459 (1894); accord, *Jackson v. State,* 210 A.D. 115, 205 N.Y.S. 658, 661–62 (N.Y.App.Div.1924), *affirmed,* 241 N.Y. 563, 150 N.E. 556 (1925). Perhaps a state court might rely on this rationale and find that, under New York law, public policy and morality require that a third party beneficiary of a contract be prohibited from insulating himself from his own fraud.

This court need not and should not decide who has the better of this argument under New York law. So long as there is room for reasonable argument on behalf of Conk, and there is, then the effect of the release does not make his claims against Leonard so weak as to establish fraudulent joinder. See *Poulos v. Naas Foods,* 959 F.2d at 73 (is there "any reasonable possibility" that state courts might rule against the defendant?); accord, *Batoff v. State Farm Insurance,* 977 F.2d at 853. Conk testified that he "relied on Leonard's representations" and that he would not have entered into the agreement with CVI if he had known the accounting records were inaccurate. Conk Aff. ¶¶ 8, 15. He also

testified that "Leonard was a major proponent of completing the [stock] transaction." Conk Aff. ¶ 16. Conk and the other selling shareholders entered into an agreement with Leonard in which he agreed to surrender his Day Dream stock options in exchange for a $1.6 million cash payment. Cplt. ¶ 22. Conk maintains that Leonard received this $1.6 million payment *as a result* of the stock sale to CVI. Conk Aff. ¶ 16. Giving Conk the benefit of disputes over both fact and law, there is at least some possibility that a state court could find that Leonard stood to benefit from the Day Dream sale and that he made fraudulent representations to ensure the sale was completed.

Even if a state court prohibits Leonard from using the release provision to bar Conk's fraud-based claims against Leonard, defendants maintain that Conk's other claims against Leonard for breach of contract, breach of fiduciary duty, professional negligence and constructive fraud are still barred by the release provision. Defendants cite no authority in support of this argument. Although a claim of constructive fraud arises by operation of law and does not require evidence of an actual intent to defraud, a state court could still consider constructive fraud to be a "fraud-based" claim. There is a reasonable possibility that a state court would prohibit a person from insulating himself from any fraud—whether actual or constructive.

Additionally, New York courts have found that public policy requires prohibiting a person from using a general limitation of liability to protect himself from liability for "willful or grossly negligent acts." See, *e.g., Graphic Scanning Corp. v. Citibank, N.A.,* 116 A.D.2d 22, 499 N.Y.S.2d 712, 715 (N.Y.App.Div.1986) (refusing to enforce a general limitation of liability against a claim of willful breach of contract); *Kalisch–Jarcho, Inc. v. City of New York,* 58 N.Y.2d 377, 461 N.Y.S.2d 746, 448 N.E.2d 413, 416–17 (1983) ("[A]n exculpatory clause is unenforceable when ... the misconduct for which it would

grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith."); *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306, 308 (1979) ("To the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have been viewed as wholly void."). In light of this case law and the facts presented here, the court holds that there is a reasonable possibility that a state court would find that Leonard acted in bad faith and would refuse to bar one or all of Conk's claims for breach of contract, breach of fiduciary duty, professional negligence and constructive fraud.

2. *Derivative Action or Direct Action by the Former Shareholder?*

■ Defendants also argue that even if the release in the Stock Purchase Agreement does not insulate Leonard from Conk's claims, no "special relationship" existed between Leonard and Conk sufficient to support any of the claims made by Conk against Leonard. Because no special relationship existed, defendants contend, Conk can assert his claims only through a derivative action. Defendants' argument would effectively foreclose any remedy for the alleged wrongs here. Because Conk is no longer a Day Dream shareholder, he would have great difficulty bringing a derivative action under Indiana law. See *United States Fidelity & Guaranty Co. v. Griffin,* 541 N.E.2d 553, 555–56 (Ind.App.1989), discussing *Gabhart v. Gabhart,* 267 Ind. 370, 370 N.E.2d 345 (1977) (holding that former shareholders of merged corporation could not bring derivative action, but recognizing possible equitable exception); see also *Portnoy v. Kawecki Berylco Indus., Inc.,* 607 F.2d 765, 767 (7th Cir.1979) (applying federal law, holding that former shareholder of merged corporation could not bring derivative action asserting federal claim for short-swing profits).

Day Dream is an Indiana corporation, and the parties have briefed this issue in terms of Indiana law. The court must determine whether there is any reasonable possibility that an Indiana court would find that Conk could maintain a direct action against Leonard on any of the alleged claims. Indiana courts follow the general rule "that a shareholder may not maintain an action in his or her own name to redress an injury to the corporation." *Knauf Fiber Glass, GMBh v. Stein,* 622 N.E.2d 163, 165 (Ind.1993). The possibility of an individual shareholder's claim, however, was also recognized by the Supreme Court of Indiana in *Sacks v. American Fletcher Nat. Bank & Trust Co.,* 258 Ind. 189, 279 N.E.2d 807 (1972). In that case, the court explained: "A personal cause of action arises when there is a breach of a duty owed specially to the stockholder separate and distinct from the duty owed to the corporation." *Id.* at 811 The court found that a personal guarantee for a corporate loan could be the basis for a personal cause of action. *Id.* at 812.

In arriving at its decision in *Sacks,* the Supreme Court of Indiana relied on *Buschmann v. Professional Men's Ass'n,* 405 F.2d 659 (7th Cir.1969) in which the Seventh Circuit applied Indiana law and found that a stockholder had a direct cause of action against a third person because the person had made promises directly to the stockholder. *Id.* at 663. Conk makes a similar argument here. He asserts that Leonard "made representations to me as a selling shareholder regarding the accuracy of the financial statements, accounting documents and tax papers." Conk Aff. ¶ 5. Conk further maintains that Leonard made specific representations to him that the accounting records had been properly prepared. Conk Aff. ¶ 12. Finally, Conk asserts that he "particularly relied upon Leonard's representations" because he was living in another state and he, unlike other shareholders, "was not actively involved in running Day Dream." Conk Aff. ¶ 8.

Defendants maintain that Leonard owed no separate duty to Conk because all the financial reports Leonard prepared and reviewed in anticipation of the sale are stan-

dard corporate reports that he routinely prepared in his capacity as CFO. That is not so clear, however. Conk contends that Leonard was acting for the shareholders rather than for Day Dream when he provided financial information to CVI and the Day Dream shareholders in connection with the Stock Purchase Agreement. Day Dream itself was not even a party to the Stock Purchase Agreement. Thus, Conk argues, at least some of the injuries for which he now seeks damages were injuries not to Day Dream but to him personally as a party to the Stock Purchase Agreement. Also, it must be recalled that Leonard was not a passive bystander in the transaction. He received $1.6 million for his stock options through a side agreement that was essential to the central purchase of all shares by CVI.

Conk has also directed the court to Indiana cases regarding gratuitous assumption of a duty. Indiana courts have recognized that a duty can be created when an individual assumes a duty to act through affirmative conduct. See, e.g., *Van Duyn v. Cook–Teague Partnership*, 694 N.E.2d 779, 781 (Ind.App.1998); *Lather v. Berg*, 519 N.E.2d 755 (Ind.App.1988). Once an individual has agreed to act for another, a duty to exercise care and skill may be imposed. *Lather*, 519 N.E.2d at 766. Because Leonard agreed to review and prepare accounting records and to provide CVI with information about Day Dream's accounting procedures, Conk contends, Leonard assumed a duty to exercise care and skill in performing these obligations.

Conk also relies on *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158 (7th Cir. 1996), in which the Seventh Circuit wrote: "An action in which the holder can prevail without showing an injury or breach of

duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity." *Id.* at 160, quoting American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01 (1992). Keeping in mind the principle that in deciding issues of fraudulent joinder, the plaintiff receives the benefit of the doubt on questions of fact, it seems that the alleged wrongdoing by Leonard in the sale of Day Dream shares to CVI could have injured Day Dream's shareholders without injuring Day Dream itself at all. In addition, the court in *Frank* recognized that the American Law Institute has proposed that in actions involving close corporations, courts should have the discretion to bypass derivative actions and permit direct actions. 83 F.3d at 161, citing American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01(d) (1992). The Seventh Circuit pointed out that § 7.01(d) is not the majority rule, and it was not applied in *Frank* itself, which was governed by Illinois law. See 83 F.3d at 161–62.[3]

Again, the issue for this court is not which side has the better of these arguments. So long as there is some reasonable support for Conk's arguments, then joinder of Leonard as a defendant was not "fraudulent" for purposes of deciding whether removal was proper. There is a reasonable possibility that an Indiana state court would find that Conk could bring a direct action against Leonard. An Indiana court could determine that because Day Dream was not a party to the Stock Purchase Agreement, Conk is not attempting to redress an injury to the corporation. A court could also find that Leonard assumed a duty to Conk to exercise care and skill in reviewing and preparing the ac-

---

**3.** In *Frank*, the Seventh Circuit declined the plaintiff's invitation to change Illinois law on this point: "Someone who wants a state to change its law must ask the state, but Frank filed this suit in federal court. Federal courts acting under the diversity jurisdiction are not the right forums for departures from established rules." 83 F.3d at 162. In this case,

by contrast, Conk filed his claims in state court, which are the right forums for such departures. A federal court considering a claim of fraudulent joinder must take care not to rely on "established rules" of state law to deny a plaintiff a fair opportunity to persuade the state courts to modify state law.

counting records. Similarly, it appears that Indiana has adopted the view in § 7.01(d) of the ALI's *Principles of Corporate Governance.* See *Barth v. Barth,* 659 N.E.2d 559, 562 (Ind.1995) (in closely held corporations, court may excuse compliance with derivative action requirements where compliance not needed to protect corporation, other shareholders, or creditors).

Conk has made two specific duty-based claims against Leonard: (1) professional negligence and (2) constructive fraud. Leonard has asserted that these claims must fail because Leonard did not owe a duty to Conk. As the court has explained, there is at least a reasonable possibility that an Indiana court would find that Leonard owed a duty to Conk. Because of this, there is a reasonable possibility that Conk could prevail on these two claims.

It is not this court's responsibility to determine the merits of Conk's claims or to perform an intricate analysis of Indiana state law. Conk has brought numerous claims against Leonard. In ascertaining whether Conk has been fraudulently joined in this action, it is not necessary for the court to analyze the viability of all of Conk's claims. If there is a reasonable possibility that Conk could prevail on at least *one* of these claims, that is enough to show that Leonard has not been fraudulently joined. Because Leonard, as a citizen of Indiana, cannot remove a case from the Indiana courts on the basis of diversity jurisdiction, Conk's claims against Leonard were not properly removed and must be remanded.[4]

## II. *Fraudulent Joinder by "Misjoinder"*

■ Even if Leonard was not entitled to remove the claims against him, defendants Richards & O'Neil and Wittlin argue that they are entitled to remove the claims against them because they were not properly joined with the claims against Leonard. That is, Richards & O'Neil and Wittlin contend Conk's complaint really pleads two separate actions—one against Leonard that is not removable and one against Richards & O'Neil and Wittlin that is removable. Defendants therefore conclude that the court should disregard Leonard's citizenship because he was misjoined in this action.

To support this argument, defendants rely on *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353 (11th Cir.1996). In *Tapscott,* Alabama plaintiffs initially alleged various claims against Alabama defendants arising from service contracts on automobiles sold and financed in Alabama. Plaintiffs later added new claims against a diverse defendant arising from "extended service contracts" on a variety of retail products. The district court found an "improper and fraudulent joinder, bordering on a sham" because plaintiffs' non-removable claims arising from automobile purchases were "wholly distinct" from their claims against the diverse defendant based on other retail products. See 77 F.3d at 1360. The Eleventh Circuit affirmed the district court's finding that a misjoinder of parties under Rule 20 of the Federal Rules of Civil Procedure amounted to fraudulent joinder, permitting the court to disregard the citizenship of the non-diverse defendants. *Id.* In discussing the insufficient factual nexus between the claims against the different defendants, the Eleventh Circuit explained:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against who a plaintiff has no possibility of a cause of action.... We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that [plaintiff's] attempt to join these parties *is so egregious* as to constitute fraudulent joinder.

*Id.* (emphasis added).

Professors Wright and Miller have suggested that *Tapscott* identified a new type of fraudulent joinder—procedural misjoin-

---

4. Because at least some of Conk's claims against Leonard are sufficiently viable to defeat the claim of fraudulent joinder, the court need not address the issues presented under the Indiana Securities Act or other claims alleged by Conk.

der. See 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3723 at 656 (3d ed.1998). Such "procedural misjoinder" would be a plaintiff's purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard. See *id.* at 656–57.[5]

■ The parties have briefed this issue of "procedural misjoinder" in terms of misjoinder under Rule 20 of the Federal Rules of Civil Procedure. Although the Eleventh Circuit in *Tapscott* relied on this rule to determine that there was an insufficient factual nexus between claims, the court is not persuaded that the Federal Rules of Civil Procedure provide the governing legal standard. After all, when Conk filed his complaint in the Indiana court, he was not required to comply with the Federal Rules of Civil Procedure in terms of joinder of parties or claims or any other aspect of the case. To address whether Conk has any claims against Leonard that are related to claims against the other defendants, the court believes the controlling standard is essentially the same that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that Conk's claims against Leonard were properly joined with his claims against the other defendants? Thus, the court has relied on Indiana Trial Rule 20(A)(2) to determine if procedural misjoinder is present here.

Nevertheless, the difference between applying federal and state standards for joinder may be more theoretical than practical in this case. The Indiana Rules of Trial Procedure closely parallel the Federal Rules of Civil Procedure with respect to joinder of parties and claims. Federal Rule 20(a) and Indiana Trial Rule 20(A)(2) both provide that persons may be joined as defendants in one action if "there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Defendants argue that Conk fails to meet the first requirement under Rule 20 because Conk's asserted right of relief against Leonard arises out of a transaction different from that giving an alleged right of relief against the other defendants. Conk's claims against Leonard are based on Leonard's advice to Conk regarding accounting matters at Day Dream, while Conk's claims against Richards & O'Neil and Wittlin are based on the opinion letter about the stock sale.

Indiana courts have applied a "logical relationship" test to the first prong of the permissive joinder standard under Rule 20. See, *e.g., McCoy v. Like,* 511 N.E.2d 501, 504 (Ind.App.1987); *Grove v. Thomas,* 446 N.E.2d 641, 643 (Ind.App.1983). There must be a logical relationship between the claims of a lawsuit and the operative facts. In interpreting identical language found in Rule 13 of the Indiana Rules of Trial Procedure, Indiana courts have stated that " 'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon their connection as upon their logical relationship." *McCoy,* 511 N.E.2d at 504, citing *Middelkamp v.*

Professors Wright and Miller have also commented on the Eleventh Circuit's "somewhat cryptic" explanation that misjoinder is only fraudulent when it is "egregious." See 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3723 at 657 (3d ed.1998). They suggest that the court's "admonition that not all procedural misjoinder rises to the level of fraudulent joinder" has added to the complexity of removal jurisdiction. They further suggest that an aggrieved defendant could avoid this complexity by seeking relief from the misjoinder in state court and then, if the state court severs the claims against the different defendants, removing the severed claims to federal court at that time. *Id.* at 658.

*Hanewich,* 173 Ind.App. 571, 364 N.E.2d 1024, 1035 (.1977); accord, *Broadhurst v. Moenning,* 633 N.E.2d 326, 331 (Ind.App. 1994).

There is a reasonable possibility that an Indiana court would find that Conk's claims against all defendants are all logically related. Conk's claims all arise out of the events culminating in the sale of Day Dream to CVI. Conk testified that he sought representations from Leonard regarding the accounting records because he wanted to ensure that all the disclosures required for the stock sale were accurate. Conk Aff. ¶ 7. He also testified that if he had known Day Dream's accounting records were inaccurate, he would not have gone through with the sale to CVI. Conk Aff. ¶ 15. Similarly, Conk received representations from Richards & O'Neil and Wittlin regarding the validity of the Stock Purchase Agreement. Cplt. ¶ 17. There is a reasonable possibility that an Indiana court would conclude that Conk has satisfied the first requirement under Rule 20 because all claims arise from Conk's preparations for one transaction: the sale of Day Dream to CVI.

Joinder of parties under Rule 20 also requires that a question of law or fact common to all defendants will arise in the action. Although many of the facts underlying these claims are different, there is a reasonable possibility that an Indiana court would find that there are common questions as to Conk's reliance in fact upon the alleged misrepresentations and warranties of one or all of the defendants, as well as questions as to the fact, cause, and/or extent of injury Conk sustained in the transaction.

Indiana courts have given Rule 20 "the broadest possible reading" because it is designed "to promote trial convenience, expedite claims, and avoid multiple lawsuits." *McCoy,* 511 N.E.2d at 503–04. Joinder of Conk's claims against all defendants here could be consistent with the goals of Rule 20. Also, if Conk were required to bring separate actions against the defendants, he would face the risk of inconsistent results.

All three defendants have maintained a unified front against Conk thus far, but it is at least plausible that in defending themselves in separate lawsuits, Leonard could argue that any losses Conk suffered were the result of Richards & O'Neil's and Wittlin's actions, and vice versa. By pointing to one another's conduct in separate trials, the defendants might be able to win inconsistent verdicts leaving Conk without a remedy. Because there is a reasonable possibility that an Indiana court would determine that Conk has satisfied both requirements of Indiana Trial Rule 20, the court finds that Leonard was not misjoined.

### Conclusion

For the reasons explained above, the court denies defendants' motion to strike the affidavit of plaintiff Conk. Because Leonard has not been fraudulently joined or misjoined in this action, the court cannot disregard his Indiana citizenship for removal purposes. The court emphasizes that its discussion of the possible merit or lack of merit of Conk's claims against Leonard should not be viewed as anything more than an analysis of whether the claims are so utterly and obviously without merit as to support a claim of fraudulent joinder. Because the Indiana citizen was not fraudulently joined as a defendant, removal was improper under 28 U.S.C. § 1441(b), and this court does not have subject matter jurisdiction over this matter. Pursuant to 28 U.S.C. § 1447(c), the court hereby grants Conk's motion and REMANDS this action to the Marion Superior Court. The court therefore has no jurisdiction to rule on defendants' motions to dismiss.

So ordered.