Felicia JAMISON, Laura Jackson, Robert Jackson, Hilton Crumb, Jacqueline Crumb, Plaintiffs,

v.

The PURDUE PHARMA COMPANY, Purdue Pharma L.P., Purdue Pharma Inc., Purdue Frederick Company, the P.F. Laboratories, Inc., Abbott Laboratories, Abbott Laboratories, Inc., Bankston–Rexall Inc. of Fayette, Byron's Discount Drugs of Natchez, Arnold E. Feldman, M.D., Defendants.

No. CIV.A. 5:02CV177BRS.

United States District Court, S.D. Mississippi, Western Division.

Feb. 5, 2003.

Anthony R. Simon, Richmond, Simon & Abston, Jackson, MS, for plaintiffs.

Christopher A. Shapley, Brunini, Grantham, Grower & Hewes, Lawrence E. Allison, Jr., Steven J. Allen, Robert L. Gibbs, Brunini, Grantham, Grower & Hewes, Walker W. Jones, III, Bradley W. Smith, Terence L. High, Baker, Donelson, Bearman & Caldwell, Chris J. Walker, John L. Hinkle, IV, Markow, Walker & Reeves, Jackson, MS, Diana Dornan, Copeland, Cook, Taylor & Bush, Ridgeland, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This matter comes before the Court on the plaintiffs' Motion to Remand [**docket no. 13–1**], and the plaintiffs' Motion for Rule 11 Sanctions [**docket no. 16–1**]. Having reviewed the Motions, briefs, appli-

cable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

## FACTS

The instant action was commenced on May 3, 2002, in the Circuit Court of Jefferson County, Mississippi. The plaintiffs, all Mississippi residents, brought suit against the Purdue Pharma Company, Purdue Pharma L.P., Purdue Pharma Inc., Purdue Frederick Company, the P.F. Laboratories, Inc., Abbott Laboratories, and Abbott Laboratories, Inc., manufacturers and marketers of Oxycontin [Pharmaceutical Defendants]; Bankston–Rexall, Inc. and Byron's Discount Drugs [Pharmacy Defendants], and Dr. Arnold E. Feldman [Dr. Feldman]. The pharmaceutical defendants are all partnerships and corporations organized and existing under the laws of states other than Mississippi.[1] The pharmacy defendants are both Mississippi corporations, and Dr. Feldman is a citizen of Mississippi.

The plaintiffs' claims arise out of alleged damages resulting from their use of the analgesic, Oxycontin, a pain medication manufactured, marketed, prescribed, and dispensed by the defendants. Against the pharmaceutical defendants, the plaintiffs state claims of strict product liability, breach of implied warranty of merchantability, negligence, malicious conduct, fraud, misrepresentation, and suppression. (Complaint, pp. 26–36). Additionally, plaintiffs Jamison and Laura Jackson state claims of negligence against the pharmacy defendants and medical malpractice against Dr. Feldman. (Complaint, pp. 36–41) Plaintiffs Robert Jackson and Jacqueline Crumb state claims of loss of companionship and society against all defendants. (Complaint, pp. 40–41).

The pharmaceutical defendants timely removed the suit to this Court on June 6, 2002. These defendants argue that removal is proper inasmuch as: (1) the pharmacy defendants have been fraudulently joined to defeat diversity jurisdiction, (2) Dr. Feldman has been fraudulently misjoined, (3) federal question jurisdiction exists, and (4) federal officer jurisdiction exists. (Notice of Removal). The plaintiffs filed a Motion to Remand on July 9, 2002, and the defendants have responded in opposition.

## DISCUSSION

■ When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1163–64 (5th Cir. 1988). Removal statutes are strictly construed, and all doubts are resolved against the finding of proper removal. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979).

### I. Fraudulent Joinder

In order to defeat the plaintiffs' Motion to Remand by demonstrating that complete diversity exists, the pharmaceutical defendants must show that *both* the pharmacy defendants and Dr. Feldman have been fraudulently joined. To this end, the pharmaceutical defendants argue that the plaintiffs have no possibility of recovery under Mississippi law against the in-state pharmacies. The pharmaceutical defendants implicitly concede that the plaintiffs state viable claims against Dr. Feldman,

---

1. The Purdue Pharma Company, Purdue Pharma L.P., and Purdue Pharma Inc. are all Delaware corporations. The Purdue Frederick Company is a New York corporation. The P.F. Laboratories, Inc. is a New Jersey corporation. Abbott Laboratories is an Illinois corporation, and Abbott Laboratories, Inc. is a Delaware corporation.

but assert that he has been fraudulently *misjoined,* as he has "no real connection to the transactions at issue with the other parties." (Defendant's Response, p. 11).

Because the Court finds that Dr. Feldman has not been fraudulently misjoined, the pharmaceutical defendants are unable to demonstrate that complete diversity exists. As such, the Court need not reach the alleged fraudulent joinder of the pharmacy defendants.

## A. Fraudulent Misjoinder Doctrine

The fountainhead of fraudulent misjoinder jurisprudence is *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir. 1996). Faced with the "egregious" joinder of two separate class actions, the *Tapscott* court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."[2] *Id.* at 1360.

In *Tapscott,* the plaintiff, on behalf of a putative class, filed suit in state court against four (4) defendants, stating claims of fraud and conspiracy arising from the sale of automotive service contracts sold and financed in Alabama. *Id.* at 1355. Two amended complaints followed, the second adding additional plaintiffs and naming three (3) new defendants, including Lowe's Home Centers, a North Carolina corporation. *Id.*

Unlike the initial and first amended complaints, which centered on automobile service contracts, the second amended complaint alleged violations arising from the sale of extended service contracts for *retail products. Id.* These new "retail class" plaintiffs, all residents of Alabama, were indisputably diverse from Lowe's, but not from the original automotive class defendants, which included several Ala-

bama residents. *Id.* at 1359–60. Additionally, none of the "retail class" plaintiffs stated claims against the original automotive contract defendants. *Id.* at 1359. Lowe's removed the case to the United States District Court for the Northern District of Alabama, claiming "fraudulent joinder," and filed a motion to sever the claims against Lowe's from the claims against the other defendants. *Id.* at 1355. The district court granted the motion to sever and remanded the action to state court as to all defendants except Lowe's. *Id.*

The plaintiffs appealed the district court's order severing the claims. The Eleventh Circuit Court of Appeals upheld the order, agreeing with the district court that a mere allegation of a common business practice was insufficient to permit joinder. *Id.* at 1360. The court characterized the joinder of the *Tapscott* defendants as "improper and fraudulent joinder, bordering on a sham." *Id.* The court cautioned, however, that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that [the plaintiffs'] attempt to join these parties is *so egregious* as to constitute fraudulent joinder." *Id.* (emphasis added).

While *Tapscott's* result was certainly correct, the fraudulent misjoinder doctrine it authored has not met with resounding approval. Commentators have suggested that the doctrine adds further complexity to the federal courts' decision making regarding removal jurisdiction, as well as additional litigation. *See* 14B Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE 3d, § 3723 at 658 (1998).

> The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and

---

2. The plaintiffs had contended "that while a court may disregard the citizenship of fraudulently joined parties, a misjoinder, no matter

how egregious, is not fraudulent joinder." *Tapscott* at 1360.

because numerous additional decisions will be needed to clarify the distinction. In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal. Because removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action, the thirty-day time limit for removal (but not the overall one-year limit for diversity cases) would not begin to run until that had occurred and thus a requirement that misjoinder be addressed in the state court would not impair the ability of an individual to remove an action following the elimination of the improperly joined party.

*Id.*

To date, this Court and many other district courts within the Fifth Circuit have been reticent to follow *Tapscott's* lead. *See Borden v. Sherwin Williams*, No. 5:01cv81BrS, Memorandum Opinion and Order (November 12, 2002) ("This Court concurs with the many district courts in this circuit that have declined to adopt the *Tapscott* approach.") (citing *Hewitt v. AAA Ins. Co.*, 1999 WL 243642, *2 (E.D.La. 1999); *Terrebonne Parish School Board v. Texaco, Inc.*, 1998 WL 160919 (E.D.La. 1998); *Blanke v. Lincoln Nat'l Corp.*, 1997 WL 786225 (E.D.La.1997); *Dorsey v. Manufacturers Life Ins. Co.*, 1997 WL 703354 (E.D.La.1997)); *see also Ren–Dan Farms, Inc. v. Monsanto Co.*, 952 F.Supp. 370 (E.D.La.1997) (noting that the Fifth Circuit has yet to address the procedural misjoinder doctrine, distinguishing *Tapscott* on its facts, and refusing to allow application of the procedural misjoinder doctrine); *but see Coleman v. Conseco*, 238 F.Supp.2d 804 (S.D.Miss.2002) (stating that the United States Court of Appeals for the Fifth Circuit has adopted the principles of fraudulent misjoinder of plaintiffs set forth in *Tapscott*) (citing *In Re: Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th

Cir.2002) (stating that *"it might* be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction") (emphasis added)).

In most instances, this Court has found *Tapscott* distinguishable on the facts. *See, e.g., Borden* at p. 4, n. 2 (finding no evidence of egregious behavior and a sufficient basis for joinder, not "a mere allegation of a common business practice"). Moreover, *Tapscott* itself makes clear that "mere misjoinder is not fraudulent joinder." *Tapscott* at 1360. But a further reason for caution in adopting *Tapscott's* approach is a peculiarity of the law of the state in which this Court sits. Like that of many states, Mississippi's Rule 20 is identical to Rule 20 of the Federal Rules of Civil Procedure. However, unlike the federal rule, Mississippi's Rule 20 has been given an extraordinarily broad interpretation that "allow[s] virtually unlimited joinder at the pleadings stage." Comment to *Miss.R.Civ.P. 20*. The Mississippi Supreme Court has noted that this more liberal attitude toward permissive joinder stems in part from the unavailability of class actions under the State's laws, and the desire to "better accommodate parties who are consequently shut out of the legal system." *American Bankers Ins. Co. of Florida v. Alexander*, 818 So.2d 1073, 1078 (Miss.2001) (upholding the joinder of approximately 1371 borrowers as plaintiffs against a common secured lender); *see also Ill. Cen. R.R. Co. v. Travis*, 808 So.2d 928 (Miss.2002) (unanimously upholding a trial court's joinder of 98 out-of-state plaintiffs in a suit against Illinois Central railroad).

This situation presents a dilemma for a district court confronted with a removed case consisting of parties who are properly joined under Mississippi's Rule 20, but misjoined under that rule's federal counterpart. Faced with this situation, district courts have taken two approaches.

In *Coleman v. Conseco*, 238 F.Supp.2d 804 (S.D.Miss.2002),[3] the court noted that Rule 81(c) states "[t]hese rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal." *Id.* at 815. After surveying a number of cases dealing with the applicability of the Federal Rules, the court concluded that Federal Rule 20, rather than the Mississippi Rule, should govern the fraudulent misjoinder analysis.[4] *Id.* at 816.

An entirely different conclusion was reached in *Conk v. Richards & O'Neil, L.L.P.*, 77 F.Supp.2d 956 (S.D.Ind.1999). In *Conk*, the district court stated that *Tapscott* notwithstanding,

> the court is not persuaded that the Federal Rules of Civil Procedure provide the governing legal standard. After all, when [the plaintiff] filed his complaint in the [state] court, he was not required to comply with the Federal Rules of Civil Procedure in terms of joinder of parties or claims ... [T]he court believes the controlling standard is essentially the same that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that Conk's claims against Leonard were properly joined with his claims against the other defendants?

*Id.* at 971. Thus, the court in *Conk* concluded that the correct standard for determining proper joinder, *in a case removed from state court*, should be one analogous to the fraudulent joinder standard, i.e., whether there is a reasonable possibility that a state court would find that the plaintiff has stated a viable cause of action against the resident defendant.[5]

At present, this issue has not been addressed by any federal court of appeals. However, as the Court finds no fraudulent misjoinder under either the federal or the state rule, no decision on this issue is demanded of this Court today.[6]

---

3. In *Coleman*, forty-eight (48) plaintiffs, three (3) resident citizens of Mississippi and forty-five (45) residents of other states including Pennsylvania, brought suit in Mississippi state court against Conseco, a Pennsylvania corporation, and three (3) of Conseco's Mississippi agents. The Pennsylvania defendant removed the case to federal court, claiming that the Mississippi defendants were fraudulently joined, and that the forty-five (45) out-of-state plaintiffs had been fraudulently misjoined to defeat diversity jurisdiction.

4. Applying the federal rule, the court severed the claims of the three (3) Mississippi plaintiffs, and dismissed without prejudice the claims of the remaining forty-five (45) out-of-state plaintiffs, finding that these plaintiffs had been fraudulently misjoined.

5. The court did note, however, that because Indiana Rule 20 and the federal rule closely parallel each other, "the difference between applying federal and state standards for joinder may be more theoretical than practical in this case." *Conk* at 971. Nevertheless, the court concluded that the proper standard is whether "[t]here is a reasonable possibility that an Indiana court would find that Conk's claims against all defendants are all logically related." *Id.* at 972.

6. The Court nevertheless notes that it finds the conclusion reached in *Conk* persuasive. While acknowledging the clear statement of Rule 81(c), applying the federal rules to cases removed from state court, this Court is also aware of Rule 82's admonition that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the [district courts]." *Fed. R.Civ.P. 82*. In this Court's opinion, a district court may run afoul of Rule 82 when it uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed*. Such a reshaping of the action by the district court creates jurisdiction where it did not previously exist. The Fifth Circuit has said,

> [w]e must be ever mindful that any rule or decision allowing a federal court to act without subject matter jurisdiction conflicts irreconcilably with basic principles of federal court authority.... The appropriate course is to examine for subject matter jur-

## B. Analysis of Fraudulent Misjoinder

■ Both Mississippi and Federal Rule 20 provide that "persons may join in one action as plaintiffs [1] if they assert any right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and [2] if any question of law or fact common to all these persons will arise in the action." *Fed.R.Civ.P. 20(a); Miss.R.Civ.P. 20(a).* "Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)." 7 Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE, § 1653 (2001). Nevertheless, the transaction and common question requirements prescribed by Rule 20(a) are not "rigid tests." *Id.* "They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." Id.

■ In determining whether the two-prong test of Rule 20 is satisfied, "the

Courts should consider such things as whether there is a logical relationship between the claims, and whether there is any overlapping proof or legal question." *Little v. Bellsouth Telecommunication,* 1995 WL 468256, *1, 1995 U.S. Dist. LEXIS 11208, *2 (E.D.La.1995).

■ In the case *sub judice,* the pharmaceutical defendants have alleged that the claims against Dr. Feldman bear "no real connection to the transactions at issue with the other parties." (Defendant's Response, p. 11). However, even a cursory review of the allegations contained in the Complaint reveals this statement to be in error.

Rule 20's first prong is plainly met in that the claims of the plaintiffs are logically related and arise out of the same series of transactions and occurrences. All five (5) plaintiffs allege that their injury is the result of a defectively designed product, Oxycontin, that was negligently promoted by defendants who misrepresented its safety and efficacy. Two (2) of these

---

isdiction constantly and, if it is found lacking, to remand to state court if appropriate, or otherwise to dismiss.
*Marathon Oil Co. v. Ruhrgas, A.G.,* 115 F.3d 315, 318 (5th Cir.1997).

In the instant case, the defendant has removed an action that, as pleaded, does not exhibit complete diversity. If the defendant has removed the action because the resident doctor has been fraudulently misjoined, the misjoinder of claims must have existed under Mississippi's Rule 20 when the action was brought. It makes little sense to say that the resident doctor's joinder became fraudulent *only after removal and only under the federal rule.*

The approach suggested by *Conk* avoids these difficulties. This approach allows severance of claims only when those claims were improperly joined under state law at the action's inception. This approach shares the same conceptual rationale underlying the doctrine of fraudulent joinder. In both instances, the court, in examining its own jurisdiction, attempts to identify an infirmity in

the plaintiff's complaint, *under the law of the state in which it was originally brought.* For fraudulent joinder, this infirmity is the failure to state a viable cause of action against a non-diverse defendant; for fraudulent misjoinder, the infirmity is the failure to comply with the state rules of joinder. Stated differently, under both the traditional fraudulent joinder analysis and the *Conk* approach, the district court simply looks to what the state court would do. Thus there is no use of Federal Rule 20 to create jurisdiction that did not previously exist. Rather, the district court simply recognizes the contours of its own jurisdiction in relation to the action as it was originally brought.

The Court notes that under the *Conk* standard, the result in *Tapscott* would likely have been the same, since the joinder of two (2) unrelated class actions would almost certainly have been misjoinder under the Indiana rule as well. The difference, however, is that under the *Conk* approach there is neither danger of aggrandizement of federal jurisdiction nor an affront to the notion of federalism.

plaintiffs also allege that this same allegedly defective product was negligently prescribed to them by Dr. Feldman. In addition, the Complaint alleges a further connection between the defendants—that the defendants conspired and engaged in a joint venture that resulted in the injuries allegedly suffered by the plaintiffs. (Complaint, ¶¶ 17–18).

That only two (2) of the five (5) plaintiffs state a claim for medical malpractice against Dr. Feldman does not indicate misjoinder. "It in not necessary that each plaintiff obtain relief from each and every defendant, or that each defendant be found liable to each and every plaintiff." *Alexis v. GlaxoSmithKline*, 2002 WL 1022261, *3 (E.D.La. May 17, 2002). Furthermore, the defendants' argument that "the allegations of the Complaint provide no basis for holding Dr. Feldman jointly liable with the other defendants" overlooks Rule 20's language permitting joinder of persons whose liability is allegedly joint, several, or in the alternative. *Fed. R.Civ.P. 20(a); Miss.R.Civ.P. 20(a).*

The instant case is easily distinguishable from *Tapscott*. In *Tapscott*, the plaintiffs attempted to join two (2) discrete groups. However, as no plaintiff in the first group stated a claim against a defendant in the second group, and no plaintiff in the second group stated a claim against a defendant in the first group, there was no series of transactions or occurrences that connected these two groups. In the instant case, the connections between the plaintiffs and the defendants are abundant. All five (5) plaintiffs state claims against the pharmaceutical defendants. Four (4) plaintiffs state claims against the pharmacy defendants. Three (3) plaintiffs state claims against Dr. Feldman. All claims arise from injuries that are allegedly the result of the use of Oxycontin.

Rule 20's second prong is also plainly met in that questions of law or fact common to all these persons will arise in this action. The rule does not require that every question of law or fact arising in the action be shared among the parties. "[R]ather, the rule permits party joinder whenever there will be *at least one* common question of law or fact." 7 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE 3d § 1653 (2002)(emphasis added).

In the instant case, the factual nexus that connects all the parties is the drug Oxycontin. Shared legal and factual questions will also arise out of the plaintiffs' claim that the pharmaceutical defendants "negligently promoted" the use of Oxycontin. (Complaint, p. 8). The plaintiffs argue that "overly aggressive" promotion of the drug led to inappropriate prescription and dispensing by physicians and pharmacists. *Id.* at 11. Obviously, the resolution of this claim for or against the pharmaceutical defendants could have an effect on the liability of the pharmacies and Dr. Feldman. *See, e.g., Hill v. Searle Laboratories*, 884 F.2d 1064, 1071 n. 3 (8th Cir.1989) (noting that over-promotion by a drug manufacturer may cause the prescribing physician not to rely on warnings and package inserts); *Salmon v. Parke Davis*, 520 F.2d 1359, 1363 (4th Cir.1975) (noting that over-promotion nullifies the effect of valid warnings). However, even inconsistent allegations of liability are not grounds for finding misjoinder as Rule 20(a) allows for the pursuit of recovery "in the alternative."

For the foregoing reasons, the Court finds that Dr. Feldman has been properly joined in this action. Therefore, the pharmaceutical defendants are unable to demonstrate complete diversity, and the Court need not reach the claims of fraudulent joinder against the pharmacy defendants.[7]

---

7. A brief footnote in the Notice of Removal
asserts that the defendants' fraudulent mis-

## II. Federal Question Jurisdiction

 The defendants assert that federal question jurisdiction exists in that the plaintiffs' claims turn on a "substantial question of federal law." (Defendant's Response, p. 21). Specifically, the defendants argue that the plaintiffs' challenge to "the labeling practices of the Defendants, must be deemed to arise under federal law because they necessarily turn on a construction of federal law, requiring an interpretation and application of [federal laws and regulations]." *Id.* at 22. The relief sought by the plaintiffs, the defendants urge, would compel changes to Oxycontin "labeling," when such labeling is under the "sole and exclusive authority" of the Food and Drug Administration [FDA]. *Id.* at 23–24.

The plaintiffs respond that, as stated in the Complaint, they rely solely on Mississippi law, and have expressly disavowed any cause of action arising under a federal statute. (Plaintiffs' Brief, p. 21). Furthermore, the plaintiffs correctly note that 21 C.F.R. § 314.70 would permit substantial changes in the labeling of Oxycontin by the defendants without the need for prior FDA approval.[8] Therefore, even though their suit does not seek labeling changes, the plaintiffs assert that if the outcome of this litigation caused the defendants to strengthen the warnings regarding Oxycontin, such changes would not encroach upon any federal authority.

 Federal question jurisdiction arises when a plaintiff sets forth allegations "founded on a claim or right arising under the Constitution, treaties or laws of the United States." *See* 28 U.S.C. § 1331. For a claim to "arise under" federal law, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936). However, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. v. Const. Laborers Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

 Generally, questions concerning federal question jurisdiction are resolved by application of the "well-pleaded complaint" rule. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152–53, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Under this rule, the plaintiff's properly pleaded complaint governs the jurisdictional inquiry. "If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking." *Hart v. Bayer Corp.,* 199 F.3d 239, 244 (5th Cir.2000)(citing *Franchise Tax Bd.* at 10, 103 S.Ct. 2841). "The rule makes the plaintiff master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

---

joinder arguments "also apply to the Pharmacy Defendants." (Notice of Removal, p. 7 n. 4). This Court has previously cautioned litigants against the practice of placing substantive arguments solely in footnotes. *See Borden v. Sherwin–Williams,* (Memorandum Opinion and Order, October 15, 2002). Nevertheless, the Court has considered the footnote, and for the reasons given in the above discussion of fraudulent misjoinder, finds that the defendants' argument is not well-taken.

8. Subsection (c) lists the changes, relevant to the plaintiffs claims, that may be made before FDA approval, which include adding or strengthening "(i) a contraindication, warning, precaution, or adverse reaction, or . . . (ii) . . . a statement about drug abuse, dependence, or overdosage . . . . [or] (iv) to delete false, misleading, or unsupported indications for use of claims of effectiveness." 21 C.F.R. § 314.70(c).

■ To establish that a plaintiff's claims involve the resolution of a substantial question of federal law, a defendant must show that: (1) a federal right is an essential element of the plaintiff's state-law claims; (2) interpretation of the federal right is necessary to resolve the case; and (3) the question of federal law is substantial. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 918 (5th Cir.2001).

■ The defendants apparently do not contend that Food, Drug and Cosmetic Act [FDCA] completely preempts[9] the plaintiffs' claims, stating that the plaintiffs' arguments "erroneously focus on the doctrine of complete preemption." (Defendants' Response, p. 21). Rather, as noted above, the defendants' argue that jurisdiction exists because the plaintiffs' claims turn on a "substantial question of federal law." Nevertheless, the defendants still seek to argue that the plaintiffs have "artfully pled" their claims so as to avoid federal question jurisdiction. *Id.* at 22(citing 14B Wright, et al. FEDERAL PRACTICE AND PROCEDURE § 3722 (1999) (artful pleading)).

■ However, "[w]ithout complete preemption, the artful pleading doctrine does not apply." *Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 783 (5th Cir.2000) ("If this was once a matter of debate, the Supreme Court recently has put the issue to rest.") (citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)). Therefore, the well-pleaded complaint rule governs the jurisdictional inquiry.[10]

As stated above, no issues of federal law appear on the face of the plaintiffs' Complaint. The defendants' assertion that the plaintiffs' claims "directly and repeatedly challenge the FDA-approved formulation, warnings, and labeling of Oxycontin" demonstrates, at most, that the defendants view FDA approval as a possible defense in this action. This in itself is insufficient to support federal jurisdiction. Moreover, the defendants have failed to show that a substantial question of federal law is a necessary element of one of the plaintiffs' well-pleaded state claims. The defendants have not, for example, identified which federal right the plaintiffs' must invoke to succeed in any of their state-law claims, or how the interpretation of any such right is necessary to the resolution of this case. Therefore, the Court concludes that the defendants have failed to establish that the plaintiffs' claims involve a substantial question of federal law. As such, federal question jurisdiction does not exist.

### III. Federal Officer Jurisdiction

28 U.S.C. § 1442(a)(1) permits the removal of any action commenced against

---

9. "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." 14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722.1 (3d ed.1998).

10. The cases cited by the defendants likewise demonstrate that the determination of a sub-stantial question of federal law is governed by the well-pleaded complaint rule.

> Under our interpretations, Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a *well-pleaded complaint* establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (emphasis added).

**1326**

"[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." The purpose of § 1442(a)(1) is to prevent federal officers or those acting at their direction from being held accountable in state courts for acts done within the scope of their federal duties. *See Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1879). The courts have allowed removal by private entities under this statute. *See, e.g., See Fung v. Abex Corp.,* 816 F.Supp. 569 (N.D.Cal.1992) (private manufacturer under direct control of the United States Navy).

▬▬ Federal officer jurisdiction requires that the defendant establish: (1) that the defendant acted under the direction of a federal officer, (2) the existence of a colorable federal defense, and (3) a causal nexus between the plaintiff's claims and the defendant's acts, performed under color of federal office. *See Mesa v. California,* 489 U.S. 121, 124–25, 134–35, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). If the defendant establishes only that the relevant acts occurred under the general auspices of a federal officer, such as being a participant in a regulated industry, they are not entitled to § 1442(a)(1) removal. *See Fung,* 816 F.Supp. at 572 (citing *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992); *Bakalis v. Crossland Sav. Bank,* 781 F.Supp. 140, 144–45 (E.D.N.Y. 1991)).

▬▬ In this Court's opinion, the instant defendants have established only that they are participants in a highly regulated industry. This is insufficient to support removal. The case law offered by the defendants in support of removal is detailed below. However, these cases simply reveal a body of law that fails to support the defendants' position.

In *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.,* 358 F.Supp. 841 (S.D.N.Y.1973), the court found that removal by a legal services association was appropriate under § 1442(a) where all funding was derived from federal sources. *See also Dixon v. Georgia Indigent Legal Servs., Inc.,* 388 F.Supp. 1156 (S.D.Ga. 1974) (following *Gurda,* calling it "a nearly perfect fit of a precedent").

In *Fung v. Abex Corp.,* removal was deemed appropriate where the defendant was a government contractor under direct control of the United States Navy. In *Holton v. Blue Cross & Blue Shield of South Carolina,* 56 F.Supp.2d 1347 (M.D.Ala. 1999), the court found removal proper where the defendant had contracted with the United States to administer insurance payments to providers of health care for dependents of uniformed service members.

In *Texas v. National Bank of Commerce of San Antonio,* 290 F.2d 229 (5th Cir. 1961), removal was deemed appropriate where the defendant, a designated financial agent of the United States, contracted with the federal government to operate banks on military installations. In *Teague v. Grand River Dam Auth.,* 279 F.Supp. 703 (N.D.Okla.1968), the court found removal proper where the defendant's operation of a dam was under the direct control of a representative of the Secretary of the Army.

The instant defendants bear little or no resemblance to the above mentioned defendants. Unlike the legal services associations, they are for-profit corporations that do not derive their primary income from federal funding. They are not government contractors, delivering either a product or a service to the United States, or to beneficiaries designated by the government. Finally, the defendants do not operate as a public utility under the direct control of the federal government.

In addressing the same argument (by at least some of the same defendants), the United States District Court for the Southern District of Ohio concluded that far more than extensive regulation must be shown, "[l]est participants in every regulated industry be entitled to 'federal officer' status." *Little, et al. v. Purdue Pharma, L.P., et al.*, 227 F.Supp.2d 838, 861 (S.D.Ohio 2002). As here, the defendants in *Little* were not "operating under the terms of a federal contract, and thus the operative contractual commands of federal officials." Rather, the defendants were

> operating at their own initiative. Drug manufacturers do not take governmental orders (or follow commands). True, their acts must conform to federal regulations, but they are under no duty, or direction, to act.... [These defendants] have neither shown nor suggested that their actions of which Plaintiffs complain were undertaken at the behest of a federal officer. Stated simply, they were not directed to act, either by law or by contract; they did so of their own volition. Accordingly, the integrity of the federal sovereign is not compromised by suit against them in state court.

*Id.* 861–62.

Based on the foregoing, this Court finds that the pharmaceutical defendants did not act at the direction of a federal officer. Therefore, there is no jurisdiction under 28 U.S.C. § 1442(a).

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that the resident defendant Dr. Feldman has not been misjoined, that the plaintiffs' claims do not involve a substantial question of federal law, and that federal officer jurisdiction does not exist. As such, the plaintiffs' Motion to Remand is well-taken and shall be GRANTED. The Court also finds that this is not a case in which sanctions are warranted. Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion to Remand [**docket no. 13–1**] is **GRANTED**.

IT IS FURTHER ORDERED that the plaintiffs' Motion for Sanctions [**docket no. 16–1**] is **DENIED**.

A separate order remanding this case to the Circuit Court of Jefferson County, Mississippi, shall follow.