Edna JACKSON et al Plaintiffs

v.

William TRULY, Jr., M.D.;
et al Defendants

No. 4:03CV276.

United States District Court,
N.D. Mississippi,
Greenville Division.

March 4, 2004.

---

John Graham Holaday, Holaday John-
son & Walter, Jackson, MS, for Edna
Jackson, Debra Hamlin, Florence Fairley,
Danyelle Griffin, Diane M. Slay, Lou Bar-
ron, Mark Eppstein, Marguerite Cook,
Clyte Mobley, Carol A. Montgomery, Mag-
gie Austin, Julia J. McMillian, Rhonda
Ashley Simmons, Dolly Mae Barkley, Pa-

tricia Cole, Rita Cavallo, Rhonda B. Esp, John Randle Alexander, Jessie Austin, Gloria L. Menzie, Johnny Alred, Vivian Lawson, Michelle Lambert, Paul Massey, John Estes, M.D., Regina Estes, Myra Hill, Marsha D. Studdard, Charles Judon, Malon v. Foster, Terecia D. Merritt, Francis Rose Daugherty, Lawanda Poley, Angela Bass, Pamela L. Creekmore, Sonja Davenport, Richard Dunsford, Teresia Latham, Ruby L. Morris, Annie White, Martha F. Bowen, Mary Ann Underwood, Amanda Bolton, plaintiffs.

J. Robert Ramsay, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, John P. Fox, John P. Fox & Associates, Houston, MS, Lynn P. Ladner, Watkins & Eager, Chris J. Walker, Markow Walker & Reeves, PA, Jackson, MS, Michael Noel Watts, Holcomb Dunbar, Shelby Duke Goza, Hickman, Goza & Spragins, PLLC, Oxford, MS, John G. Wheeler, Mitchell, McNutt & Sams, Tupelo, MS, Shelby Kirk Milam, Hickman, Goza & Spragins, PLLC, Oxford, MS, Stephen Paul Wilson, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, Stephen P. Kruger, Marcus Alfred Treadway, III, Michael J. Wolf, Page, Kruger & Holland, Jackson, MS, Eugene R. Naylor, Wise, Carter, Child & Caraway, Jackson, MS, Gerald Wilborn Chatham, Sr., Gerald W. Chatham, Sr., Attorney, Hernando, MS, L. Carl Hagwood, Campbell, Delong, Hagwood & Wade, Greenville, MS, Robert Niles Hooper, Markow Walker & Reeves, PA, Jackson, MS, Robert J. Dambrino, III, Gore Kilpatrick Purdie Metz & Adcock, Grenada, MS, for William Truly, Jr., M.D., Truly Family Medical Clinic, A.E. Wood, Jr., M.D., Danny Jackson, M.D., Parkview Regional Medical Center, Stanko Vuk, M.D., Nastech Pharmaceutical Company, Inc., Bristol–Myers Squibb Company, Apothecon, Inc., Cephalon, Inc., Joseph Boggess, M.D., Douglas L. Conner, Estate of, T. David Griffin, Dr., M.D., William Billington, M.D., M.D., Trace Regional Hospital, William G. Bennett, Dr., M.D., Baptist Memorial Hospital–North Mississippi, Antronette McKenzie, M.D., M.D., Forrester Ruhl, Premier Family Practice, Larry Montgomery, M.D., North Mississippi Medical Center, Inc., Women's Hospital, Tupelo, MS, Grayden Tubb, John F. Laurenzo, M.D., South Panola Hospital, William Haire, Dr., M.D., Kamlesh Parekah, M.D., Henry Deckstone, M.D., Steven Butler, M.D., Achin Sharma, M.D., Tommy Simpson, M.D., J.R. Medlin, M.D., Baptist Memorial Hospital–Union County, Family Medical Center, Ripley, MS, Magnolia Regional Hospital, Carl Welch, M.D., Michael G. Howell, M.D., Greg Hale, M.D., Baptist Memorial Hospital, Desoto County, Richard Russell, M.D., M.D., Stephen Shirley, M.D., Sam Creekmore, M.D., Paul Odom, M.D., John L. Black, M.D., M.D., Mississippi Baptist Medical Center, Tishomingo Medical Center, Paul King, M.D., John Martin Lee, Jr., M.D., North Mississippi Health Services, Inc., North Oak Regional Medical Center, Brendon S. Ross, M.D., William Ross, M.D., Senatobia Family Practice, Russell Medical Clinic, Parkview Clinic, Robert P. Tate, M.D., Greg Vance, M.D., Desoto Family Medical Center, Joseph Visconti, FNP, Edgar Donahoe, Jr., M.D., Indianola Family Medical, James K. Harvey, M.D., Herman J. Palmer, M.D., Ruby Griffin, M.D., William T. Oakes, Jr., M.D., Itawamba County Hospital, Gilmore Memorial Hospital, Incorporated, Baptist Memorial Hospital, Leake Memorial Hospital, James R. Mayfield, M.D., Larry Montgomery, M.D., M.D., Premier Family Practice, Stephen Montgomery, M.D., Ronald Myers, Sr., M.D., Mississippi Baptist Medical Center, Golden Trianble, Jackson Clinic, Minor Medical Care, University of Mississippi Medical Center, Edwin H. Meeks, M.D., Charles Stanback, Fulton Family Medical, Jimmy Chism, M.D., Pontotoc Family Medical Clinic,

North Mississippi Medical Center, Family Health Center of Belzoni, The Gorton's Clinic, Walter Gorton, M.D., Baptist Memorial Hospital–Golden Triangle, Inc., Baptist Memorial Hospital–Desoto County, Inc., Baptist Memorial Hospital–Booneville, Inc., Tri–Lakes Medical Center fka South Panola Hospital, defendants.

## ORDER

MILLS, District Judge.

This cause comes before the Court on the plaintiff's motion for remand. The Court has reviewed the briefs and exhibits and is prepared to rule.

The plaintiffs are thirty-eight Mississippi residents and 6 out-of-state plaintiffs, all of whom have been prescribed the drug Stadol. The defendants include four out-of-state pharmaceutical companies (Nastech Pharmaceutical Company, Cephalon, Apothecon, and Bristol–Myers), a number of in-state physicians, and a number of in-state medical clinics and hospitals.

The complaint alleges that defendant Bristol–Myers sought to obtain government approval for the drug Stadol by representing that it would be used for temporary, post-operative pain relief and not for prolonged use. Bristol–Myers claimed that the drug had few addictive properties and had an extremely low potential for abuse. Based on these representations, the FDA and the DEA classified Stadol as an uncontrolled substance.

In fact, Stadol carries significant risk of addiction, as well as other side effects such as seizures and convulsions. In 1998, warnings on Stadol were changed by the drug manufacturers to reflect that Stadol was a Schedule IV narcotic and was highly addictive. The plaintiffs allege that the drug manufacturers knew about Stadol's addictive properties long before the warnings were added and actively concealed these properties from the government, physicians, pharmacies and patients. The plaintiffs also allege claims against the in-state pharmacies and physicians for strict liability, and breach of implied warranty, as well as claims allegedly arising from their failure to properly prescribe Stadol after it was rescheduled as a Schedule IV drug.

On April 10, 2003, the plaintiffs filed this action in the Humphreys County Circuit Court. The defendants timely removed, arguing that the in-state doctors and pharmacies were fraudulently joined and/or misjoined solely to defeat diversity. The defendants also argue that federal bankruptcy jurisdiction exists over some of the plaintiffs. The plaintiffs have now moved for remand.

## ANALYSIS

### I. FRAUDULENT JOINDER.

In order to prove fraudulent joinder, the defendants must either show that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.[1]" *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). In reviewing allegations of fraudulent joinder, the Court does not conduct an evidentiary hearing, but utilizes a summary judgment-like procedure. *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir.2000). Under this procedure, the Court may pierce the pleadings to determine whether, under Mississippi law, the plaintiffs have a valid claim against the in-state defendants. *Le-*

---

1. The defendants do not argue that there has been any outright fraud in the pleading of jurisdictional facts.

*Jeune v. Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir.1992). The removing party bears the burden of demonstrating fraudulent joinder, and all disputed questions of fact and ambiguities in controlling state law are resolved in favor of the non-removing party. *LeJeune,* 950 F.2d at 271.

The drug manufacturers first rely on the reasoning of *Louis v. Wyeth–Ayerst Pharmaceuticals, Inc.,* Civil Action No. 5:00CV102LN (S.D.Miss. Sept. 25, 2000)(unpublished opinion). In that case (which was a multi-plaintiff case involving the drug Rezulin), Judge Lee denied the motion for remand and dismissed the individual pharmacies and physicians because the complaint alleged a failure to warn on the part of the drug companies. Consequently, the pharmacies and physicians could not be liable for failing to warn the plaintiffs of side effects when, according to the complaint, they themselves had not been warned of the side effects by the drug manufacturers. Judge Lee's reasoning in *Louis* was later adopted by the MDL court as a basis for denying motions to remand several Mississippi cases in *In re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 290 (S.D.N.Y.2001).

The Court is also aware, however, of Judge Lee's later opinion in *Geneva Little, et al v. Nastech Pharmaceutical Company Inc., et al,* Civil Action No. 3:02CV1682LN (S.D. Miss June 13, 2003). In *Little,* Judge Lee distinguished the case (which involved the drug Stadol which lies at the heart of this case) from *Louis,* holding that the *Little* complaint alleged that drug manufacturers only concealed Stadol's harmful properties until 1998, after which the pharmacies and physicians knew or should have known that Stadol was a Schedule IV drug. Consequently, Judge Lee interpreted the negligence allegations against the in-state defendants to relate only to their post–1998 conduct. Viewing the disputed facts and unchallenged allega-

tions in the light most favorable to the plaintiff, Judge Lee held that a reasonable jury might find that the in-state pharmacies and physicians might be liable for negligence in failing to treat Stadol as a Schedule IV drug in violation of state law. On that basis, Judge Lee granted the motion for remand.

■ The Court is persuaded by Judge Lee's reasoning on this point, and the facts of the instant case are plainly analogous to those in *Little.* The complaint clearly identifies 1998 as the year in which Stadol was labeled as a Schedule IV drug. The complaint further specifically states a claim for medical malpractice against the physician defendants for failure to warn that Stadol was a controlled substance and for negligence in prescribing the drug. If the plaintiffs' can show at trial that the individual pharmacies and physicians negligently failed to treat it as a Schedule IV drug, then a jury might hold those defendants liable. Accordingly, the Court finds that these defendants are not fraudulently joined.

## II. FRAUDULENT MISJOINDER.

The doctrine of fraudulent misjoinder was first articulated in the Eleventh Circuit decision of *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir.2000). There, certain plaintiffs sought recovery on behalf of a putative class against four defendants, based on claims of fraud and conspiracy arising from the sale of automobile service contracts. *Tapscott,* 77 F.3d at 1355. A later amended complaint added several new plaintiffs and three new defendants, including Lowe's Home Centers, a foreign corporation. *Id.* This amended complaint, however, did not center on automobile service contracts, but on extended service contracts for retail products wholly unrelated to the contracts in the original complaint. *Id.* The newly

added plaintiffs were all diverse from Lowe's but not from the original automotive class defendants, and none of the "retail class" plaintiffs stated claims against the original automotive contract defendants. *Id.* at 1359–60.

After Lowe's removed the case, the district court granted the motion to sever and remanded the action to state court as to all defendants except for Lowe's. *Id.* at 1355. The Eleventh Circuit affirmed the district court order, holding that the joinder of the different groups of defendants was "improper and fraudulent joinder, bordering on sham." *Id.* at 1360. The Eleventh Circuit cautioned, however, that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that [the plaintiffs'] attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

Since the *Tapscott* decision was handed down, it has engendered much controversy among the federal courts in this district, particularly after it was cited with some approval by the Fifth Circuit in *In re: Benjamin Moore & Co.,* 309 F.3d 296 (5th Cir.2002)("*Benjamin Moore I*")("[I]t might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction."). *Compare Coleman v. Conseco,* 238 F.Supp.2d 804 (S.D.Miss.2002)(interpreting *Benjamin Moore I* to adopt fraudulent misjoinder doctrine) *with Glenn v. Purdue Pharma Co.,* 2003 WL 22243939 (N.D.Miss. Sept.25, 2003)("[T]he Defendants rely on an often-discredited Eleventh Circuit opinion for the proposition that the Plaintiffs are procedurally misjoined to such an egregious degree so as to constitute fraudulent joinder.").

Later, in *In re: Benjamin Moore & Company,* 318 F.3d 626 (5th Cir.2002)("*Benjamin Moore II*"), the Fifth Circuit seemed to assume without formally deciding that *Tapscott*'s fraudulent mis-

joinder doctrine was applicable. However, the *Benjamin Moore II* Court went on to hold that it lacked jurisdiction to review the district court's ruling that fraudulent joinder did not occur and that the case should be remanded. *Benjamin Moore II,* 318 F.3d at 631. This Court concludes that the Fifth Circuit has adopted, at least in principle, the doctrine of fraudulent misjoinder.

This does not answer the question, however, of how to apply the doctrine of fraudulent misjoinder. Most importantly, there is considerable disagreement among the Mississippi district courts as to whether, when considering the joinder of the parties, a court should rely on Rule 20 of the Federal Rules of Civil Procedure or its state law counterpart, Rule 20 of the Mississippi Rules of Civil Procedure. The two rules are identical in language, but Mississippi's Rule 20 has been given a remarkably broad interpretation by the state courts when compared to the federal rule, and it allows "virtually unlimited joinder at the pleadings stage." Miss R. Civ. P. 20, Comments. This liberal attitude, according to the Mississippi Supreme Court, "stems in part from the unavailability of class actions under the State's laws, and the desire to 'better accommodate parties who are consequently shut out of the legal system.'" *Jamison v. Purdue Pharma Co.,* 251 F.Supp.2d 1315, 1320 (S.D.Miss.2003)(quoting *American Bankers Ins. Co. of Florida v. Alexander,* 818 So.2d 1073, 1078 (Miss.2001)(affirming joinder of about 1371 borrowers as plaintiffs against common secured lender)).

■ Consequently, parties which are properly joined under Mississippi Rule 20 may well be misjoined under Federal Rule 20, and there is a split within the Mississippi federal courts as to which should be applied. *Compare Polk v. Lifescan, Inc.,* 2003 WL 22938056 (N.D.Miss. Sept. 22,

2003)(applying Mississippi Rule 20) *with Coleman*, 238 F.Supp.2d at 814–15 (applying Federal Rule 20). Although there are compelling reasons for applying either the Mississippi Rule or the Federal Rule, the Court is persuaded in this case by Judge Bramlette's analysis in *Jamison*, 251 F.Supp.2d at 1320–22. Although Judge Bramlette concluded that the case should be remanded under either the federal or state rule, he did cite with approval *Conk v. Richards & O'Neil, L.L.P.*, 77 F.Supp.2d 956 (S.D.Ind.1999), which held that, in a case removed from state court, the relevant question in a misjoinder inquiry was whether there was a reasonable possibility that the state court would find that the plaintiff has stated a viable cause of action against the resident defendant. 77 F.Supp.2d at 971. The Court finds this to be the better rule since fraudulent misjoinder claims are clearly analogous to fraudulent joinder claims, and, to the extent that applying Mississippi Rule 20 instead of Federal Rule 20 will affect the outcome of a fraudulent misjoinder case, the Court will apply the Mississippi rule.

On February 20, 2004, the Mississippi Supreme Court amended the comments to Mississippi Rule 20 to clarify that the phrase "same transaction or occurrence" means that there must be "a distinct litigable event linking the parties." Miss. Rule Civ. Pro. 20, comment (as amended February 20, 2004). The amendments also struck the prior language permitting "virtually unlimited joinder at the pleadings stage." *Id.* Although the Court is aware of no precedent for whether an amendment to the comment to a rule of civil procedure applies prospectively or retroactively, the Court is inclined to think that this amendment applies to cases filed after February 20, 2004.

■ Turning now to the case at bar, the Court notes that all plaintiffs claim to have been injured by the drug Stadol, that the drug manufacturers sold Stadol through the defendant pharmacies and physicians who acted as learned intermediaries under Mississippi law, and that (accepting the allegations in the complaint as true) all in-state defendants may have improperly prescribed and/or sold Stadol even after it was reclassified a Schedule IV drug. The Court notes that there may well be joinder issues in this case, since obviously not all of the plaintiffs purchased Stadol from all of the defendant pharmacies and/or physicians. Indeed, there may well be plaintiffs who did not acquire Stadol from any of the in-state defendants. Nevertheless, under Mississippi's interpretation of Rule 20, the Court does not find the joinder of the parties to be so egregious as to constitute fraudulent misjoinder as contemplated by *Tapscott*. Additionally, regardless of whether or not the joinder of these parties passes muster under Mississippi's amended Rule 20, the Court fails to see how the joinder could have been fraudulent under a rule amended months after the case was filed.

## III. FEDERAL BANKRUPTCY JURISDICTION.

■ Finally, the defendants argue that this Court has federal question jurisdiction arising from the fact that at least five of the forty-four plaintiffs have filed petitions for bankruptcy. Under 28 U.S.C. § 1334, district courts have original but not exclusive jurisdiction over civil proceedings arising under title 11, or arising in or related to title 11. 28 U.S.C. § 1334(b). The defendants do not argue that this case represents a "core proceeding" under 28 U.S.C. § 157, i.e. a proceeding which "invokes a substantive right provided by title 11 or ... could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). At best, the Court only has "related to" jurisdiction, which simply means that the outcome of these

proceedings "could conceivably have any effect on the estate being administered in bankruptcy." *Wood,* 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984)).

Even assuming that "related to" jurisdiction exists, however, the Court must still consider whether remand is still warranted under the doctrines of discretionary abstention and equitable remand. The two doctrines are very similar and require the Court to consider many of the same factors, including:

1. the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

2. extent to which state law issues predominate over bankruptcy issues;

3. difficult or unsettled nature of applicable law;

4. presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

5. jurisdictional basis, if any, other than § 1334(c);

6. degree of relatedness or remoteness of proceeding to main bankruptcy case;

7. the substance rather than the form of an asserted core proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the burden of the . . . court's docket;

10. the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial;

12. the presence in the proceeding of non-debtor parties;

13. comity; and

14. the possibility of prejudice to other parties in the action.

*Davis v. Life Investors Ins. Co. of America,* 282 B.R. 186, 194 (S.D.Miss.2002).

In the Court's view, these factors compel the equitable remand of this case. The sole effect of this case on the bankruptcy estates will be to properly value an asset of the estates (i.e. the plaintiffs' claims), a job that can be performed perfectly well by the state court. There is no jurisdictional basis other than § 1334, and state law claims completely predominate this action. The non-debtor plaintiffs far outnumber the debtor-plaintiffs. Finally, principles of comity also lead the Court to defer to the state's interest in trying this case when there is no countervailing federal interest. The Court sees little, if any, practical benefit in retaining jurisdiction over this case when the Bankruptcy Court and the debtor-plaintiffs' trustees can protect the interests of the plaintiffs' creditors regardless of which forum tries the case. Consequently, assuming this Court does have jurisdiction based on the bankrupt status of five of the forty-four plaintiffs, equitable remand is clearly in order.

### CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED that the plaintiffs' motion for remand [79–1] is GRANTED, and that this case is hereby remanded to the Humphreys County Circuit Court.