James L. REED, Thomas and Dora Anita Sumrall, John and Theresa Hotz, Thomas and Della Pitts, Meri Emily Norwood, Brett Whaley, Gloria O'Neal, Bobby Manley and Mary Manley, Michael Joyner and Rosemary Joyner Plaintiffs

v.

AMERICAN MEDICAL SECURITY GROUP, INC., United Wisconsin Life Insurance Company, Terry Dale, Ray McEachern, Shelby Smith, William Gardner, Michael Bryan and Shane Carpenter Defendants

No. CIV.A. 403CV72LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

March 4, 2004.

Christopher T. Hellums, Robert Gordon Methvin, Jr., James M. Terrell, Pittman, Hooks, Dutton & Hollis, PC, Birmingham, AL, for Plaintiffs.

James E. Flennor, Jr., Alan D. Leeth, Michael J. Clemmer, Burr & Forman, LLP, Birmingham, AL, Orlando R. Richmond, Dr., Richmond Simon & Abston, PLLC, Columbus, MS, L. Carl Hagwood, Paul Scott Phillips, Campbell, Delong, Hagwood & Wade, Greenville, MS, Jim Bullock, Shell Buford, PLLC, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447. Defendants American Medical Security Group, Inc. (AMS) and United Wisconsin Life Insurance Company (United Wisconsin) have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to remand should be granted in part, and denied in part, as explained fully below.

This suit was filed on December 31, 2002 in the Circuit Court of Noxubee County, Mississippi, by fourteen Mississippi plaintiffs (only one of whom was actually a resident of Noxubee County), who complain, *inter alia,* that they were fraudulently induced to purchase policies of insurance issued by AMS and United Wisconsin[1] as a result of misrepresentations as to the "terms, conditions, performance, and structure of the policies."[2] In their state court complaint, plaintiffs named as defendants AMS and United Wisconsin, both non-resident corporate defendants, along with six Mississippi insurance agents, each of whom was alleged to have sold an AMS policy to one or another of the plaintiffs. The case was timely removed by the nonresident/ diverse defendants, who claimed that plaintiffs had fraudulently joined the resident agent defendants to defeat diversity jurisdiction. Plaintiffs promptly moved to remand, taking the position that viable claims have been asserted against one or more of these individual defendants.

Relative to the motion to remand, plaintiffs have stipulated that the amount in controversy exceeds the requisite $75,000 for diversity jurisdiction, *see* 28 U.S.C. § 1332. Moreover, they have stipulated that the claims of Thomas Sumrall, John and Theresa Hotz, Thomas Pitts, Bobby and Mary Manley and Michael and Rosemary Joyner are to be disregarded for

---

1. The complaint alleges that defendants misrepresented to them that United Wisconsin was the insurer and that AMS was not the insurer but rather was the insurance administrator. According to plaintiffs, AMS is, in fact, a "partial insurer," in that it is a 50% reinsurer under the policy, and United Wisconsin is a wholly owned subsidiary of AMS.

For purposes of this opinion, the court will accept plaintiffs' allegation as true, and will therefore refer to AMS as the insurer.

2. The specific allegations, as well as the specific grievances described by plaintiffs in their depositions, will be addressed more fully *infra.*

purposes of the court's decision on the motion to remand. Finally, whereas defendants undertook in their response to the motion to remand to demonstrate that none of the other plaintiffs has a cognizable claim against any of the resident defendants, plaintiffs' rebuttal submission addresses only the alleged viability of the claims of four plaintiffs, James Reed, Gloria O'Neal, Brett Whaley and Dora Sumrall. Plaintiffs wholly fail to address, much less challenge defendants' assertion that neither Meri Norwood nor Della Pitts dealt with any of the resident defendants in purchasing their AMS policies.[3]

That leaves for consideration in the fraudulent joinder analysis the claims of four plaintiffs, James Reed, Gloria O'Neal, Brett Whaley and Dora Sumrall. Having considered the record evidence relative to their claims, the court concludes that each has a reasonable possibility of recovery against the respective agent who sold him or her an AMS Life policy.

In their complaint, plaintiffs assert state law causes of action for breach of fiduciary duty, fraudulent and/or negligent misrepresentation and/or omission, breach of the duty of good faith and fair dealing, negligence and unjust enrichment/constructive trust based on allegations that "defendants" misrepresented the "terms, conditions, performance, and structure" of AMS Life policies that plaintiffs purchased. Although this general allegation is obviously broad, the principal focus of plaintiffs' complaint is their charge that "Defendants, including Defendant agents, misrep-

resented to Plaintiffs that Plaintiffs were purchasing a group policy and that by purchasing the group policy, the Plaintiffs would receive the benefit of 'group' rates," and that "[i]n reality, Plaintiffs' premiums were not a function of the 'group' claims experience, but rather were a function of Defendants' undisclosed intention to significantly increase premiums...." Plaintiffs allege that defendants had them join a "group," the Taxpayers Network, Inc., in order to obtain "group" coverage, yet these putative groups were "nothing more than sham organizations used to provide cover for [their] alleged 'group policy'." According to the complaint, "Defendants" intentionally underpriced "their" policy for the first year's premium, and thereby created the perception that the premiums were cheaper than AMS's competitors, when "Defendants had the present undisclosed intention to substantially raise premiums on the policy semi-annually and/or annually, regardless of whether claims were filed and to substantially increase the premiums even more for customers who filed claims." Further, "Defendants failed to disclose the true nature of how the insurance policies were priced and how premium rate increases were derived," in that while they misled plaintiffs into believing that their premiums were based on the entire group claim experience, they used only Mississippi policyholders as a "subgroup" and substantially increased the premiums for Mississippi policyholders.[4]

■ When considering whether a nondiverse defendant has been fraudulently

---

3. Defendants point to Norwood's deposition testimony that she purchased her policy from a man named Steve Lawrence (who is not a defendant), and not from William Gardner, as alleged in the complaint. They further note that although the complaint alleges that Pitts purchased her policy from Shelby Smith, she testified that her policy was purchased from Ken Smith, who is not a defendant in this cause.

4. The court notes that the complaint appears to imply that the policies sold by AMS were not group policies but were misrepresented as such, but at the same time, the complaint alleges that the policy used the Mississippi policyholders as the group on whose claims experience premium rates would be based.

joined to defeat diversity of citizenship jurisdiction, the court may "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony," *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995), in an effort to determine whether the plaintiff has a reasonable possibility of recovery against the party claimed to have been fraudulently joined. *See Travis v. Irby*, 326 F.3d 644, 648 (5th Cir.2003). In this case, defendants have furnished the court with the deposition testimony of the four plaintiffs at issue to show that they have no potentially viable claim against any of the agent defendants. A review of that testimony reveals the following.

First, it is quite clear from plaintiff James Reed's testimony that notwithstanding the allegations appearing in the complaint, he personally did not care whether the AMS policy he purchased was an individual or a group policy, and that his purchase of an AMS policy was not prompted by any understanding or misunderstanding of the nature of the policy based on anything that defendant agent Terry Dale said or did not say about whether the policy was a group policy.[5] According to Reed, "[a]s long as the policy done what it said it would do, [he] wouldn't have cared really." Reed's problem, and the reason he has sued Terry Dale, is that the policy, according to Reed, has not done what Dale said it would do. More specifically, Reed claims that relative to the poli-

cy's deductibles and co-payments, Dale misrepresented that the $4,000 annual deductible under the policy applied only if the insured became hospitalized whereas outpatient services were subject only to a one-time annual deductible of $500; and Dale also misrepresented that the policy provided a prescription drug benefit that covered all but a $15 co-pay on generic brands and a $35 co-pay on all other prescriptions after the insured met a $100 deductible.

Gloria O'Neal testified that although defendant Shane Carpenter told her that the AMS policy he was offering her was a group policy, she believed from the beginning that it was an individual policy and purchased the policy with that understanding.[6] Nevertheless, she confirmed in her deposition that her complaint against Carpenter does relate, among other things, to the information he provided and/or failed to provide to her concerning AMS's propensity to raise the premium rates on its policy. With reference to this subject, O'Neal initially testified by deposition that when she first discussed the AMS policy with Carpenter, she asked him specifically whether the premium rates were going to jump every three or six months or a year, and was assured by Carpenter that the premium rate was "locked in" for so long as she had the insurance. Later in the deposition, however, she complained that while Carpenter never told her that the premium would not go up, he failed to tell her that AMS was "bad to raise their rates every three to six months."[7]

---

**5.** In fact, Reed indicated in his testimony that he preferred "[j]ust regular individual coverage," because "[i]f you've got group, the insurance bases it on how the group insurance, how their health are. One suffers, all suffers."

**6.** It is clear from O'Neal's testimony that she really had and has no comprehension of the nature of group insurance, and although she believes that Carpenter was not altogether

honest with her concerning aspects of her AMS policy, it is apparent that she did not elect to sue either AMS, Wisconsin Life or Carpenter because she felt she had been misled to believe she had bought a group policy.

**7.** O'Neal also testified that Carpenter told her—or indicated to her—that the AMS policy was "the best policy in the state." Although O'Neal testified that she thinks this may have been a misrepresentation, she admitted that

Plaintiff Dora Sumrall agreed in her deposition testimony that she is making a claim in this case that her AMS policy was misrepresented—presumably by agent Ray McEachern—as a group policy. She believes that this was untrue, and in fact testified that when she made inquiry of AMS concerning why her premiums had increased rather significantly, she was told that her premiums on the policy increased because she made a claim for a back surgery in 2001. In addition to this claim, O'Neal also testified that McEachern misrepresented the policy's coverage, in that he misrepresented that the policy co-pays counted toward the deductible; he misrepresented that the policy provided prescription drug coverage, with a co-pay ranging from $15 to $25; and he misrepresented that there was accidental injury coverage that paid 100 percent.

Brett Whaley complained in his deposition that Michael Bryan, the agent from whom he and his wife bought an AMS policy, represented that the policy was a group policy, and misrepresented that the premiums probably would not increase for a year. In fact, the premiums increased significantly just months after the policy was issued, which prompted Whaley to telephone Bryan for an explanation. Despite repeated attempts to speak with Bryan, Bryan never returned his calls.

Although defendants obviously contend otherwise, the court is not persuaded that these four plaintiffs have no possibility of recovery against the agents from whom they purchased their policies. Defendants point out that while these plaintiffs complain about misrepresentations by the agents, each of them actually received a copy of his or her policy and could have ascertained merely by reading the policy that the insurer had the right to raise

premiums every three months, and could also have ascertained the benefits available under the policies, along with other terms, including the amounts and applicability of deductibles and co-pays, simply by reading their policies. Defendants thus submit that because plaintiffs were in possession of documents disclosing this information, then under the law, they had no right to rely, and could not reasonably have relied, on alleged misrepresentations by the defendant agents that were contrary to the terms of their contracts, even if plaintiffs failed to read those contracts. *See Stephens v. Equitable Life Assur. Society of U.S.*, 850 So.2d 78, 82 (Miss.2003) (stating that " 'a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.' ") (quoting *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.*, 584 So.2d 1254, 1257 (Miss.1991)).

 At the time the agents sold the policies in question to plaintiffs, these plaintiffs were not in possession of their policies and thus were not in possession of documents that would have imparted knowledge of the agents' alleged misrepresentations. Plaintiffs' policies were not delivered until weeks later. Consequently, the cases upon which defendants rely are not dispositive of the issue presented. Perhaps the more pertinent cases are those which hold that once a party accepts an insurance policy for a reasonable amount of time and makes no complaint about the coverage, the insured is bound by the provisions of the policy. *See Atlas Roofing Mfg. Co. v. Robinson & Julienne, Inc.*, 279 So.2d 625 (Miss.1973); *see also Cherry v. Anthony, Gibbs, Sage*, 501 So.2d

she has no idea whether or not that was true, since Carpenter never told her about any other policies that might be available to her and

failed to respond to her inquiries about the potential for a better policy.

416 (Miss.1987). Yet according to the deposition testimony of these plaintiffs, although they did not file suit right away, they *did* complain, either to the agent or to AMS. Hence, while the court cannot conclude as a matter of law that these plaintiffs have a basis for recovery against the agent defendants, neither is the court able to conclude that defendants have sustained their burden to show that these plaintiffs have no reasonable possibility of recovery against the defendant agents who sold their respective policies. What the court does conclude, however, is that the claims of these plaintiffs have been fraudulently misjoined with the claims of their co-plaintiffs.[8]

In light of the Fifth Circuit's observation in *In Re: Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir.2002), that "it might be said that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction," the undersigned, as well as a number of other judges in this district and in the Northern District of Mississippi, have concluded that in this circuit, misjoinder is a viable basis for removal in a proper case. *See Sweeney v. The Sherwin–Williams Co.,* 304 F.Supp.2d 868 (S.D.Miss.2004) (Barbour, J.); *Smith v. Nationwide Mut. Ins. Co.,* 286 F.Supp.2d 777, 781 (S.D.Miss. 2003) (Wingate, J.); *Little v. Nastech Pharmaceutical Co., Inc.,* Civil Action No. 3:02CV1682 (S.D. Miss. June 12, 2003) (Lee, J.); *Polk v. Lifescan, Inc.,* 2003 WL 22938056, *5 (N.D.Miss. Sept.23, 2003) (Pepper, J.). The determination as to what might constitute a proper case for finding fraudulent misjoinder, however, was complicated somewhat by the tension between the Mississippi Supreme Court's "extraordinarily broad interpretation" of Mississippi Rule of Civil Procedure 20(a) which allowed "virtually unlimited joinder at the pleadings stage," *Jamison v. Purdue Pharma Co.,* 251 F.Supp.2d 1315, 1320 (S.D.Miss.2003) (citing cmt. to Rule 20(a)), and the federal courts' more circumscribed interpretation of the federal counterpart to that rule, Federal Rule of Civil Procedure 20(a).[9][10] Recent developments in Missis-

8. "Fraudulent misjoinder" refers to the joining of claims into one suit in order to defeat diversity jurisdiction "where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d 956, 971 (S.D.Ind.1999).

9. With the exception of the emphasized language, both the Federal Rule and the Mississippi Rule state:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (*and any vessel, cargo or other property subject to admiralty process in rem* ) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20(a) and Miss R. Civ. P. 20(a) (emphasized language appearing only in Fed. R.Civ.P. 20(a)).

10. *See Jamison v. Purdue Pharma Co.,* 251 F.Supp.2d 1315, 1320 (S.D.Miss.2003), where the court offered as one reason for its hesitance to embrace fraudulent misjoinder "a peculiarity of [Mississippi] law":

Like that of many states, Mississippi's Rule 20 is identical to Rule 20 of the Federal Rules of Civil Procedure. However, unlike the federal rule, Mississippi's Rule 20 has been given an extraordinarily broad interpretation that "allow[s] virtually unlimited joinder at the pleadings stage." Comment

sippi law relating to joinder of plaintiffs, and specifically the Mississippi Supreme Court's interpretation of Mississippi Rule of Civil Procedure 20(a) in a way that more closely parallels Federal Rule 20(a), have lessened, if not eliminated, this tension so that the difference between applying federal and state standards for joinder could fairly be said, at least for purposes of this case, to be more theoretical than practical. *See Janssen Pharmaceutica, Inc. v. Armond,* 866 So.2d 1092, 2004 WL 307449 (Miss.2004). The question thus becomes whether "[t]here is a reasonable possibility that [a Mississippi] court would find that plaintiffs' claims ... are all logically related." *Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d 956, 972 (S.D.Ind.1999).

In *Janssen Pharmaceutica, Inc. v. Armond,* 866 So.2d at 1095, the Mississippi Supreme Court held that "the prescribing of the drug Propulsid by 42 different physicians to 56 different patients did not arise out of the same transaction, occurrence, or series of transactions or occurrences, and that joinder in [that] case unfairly prejudice[d] the defendants." In its opinion, the court, while acknowledging language in the comments to Mississippi Rule of Civil Procedure 20(a) that espoused a philosophy of allowing "virtually unlimited joinder at the pleading stage,"

made it clear that there are indeed limits on what would be considered proper joinder under the rule. The court observed that the rule

> "imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and, (2) some question of law or fact common to all the parties will arise in the action. *Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)* .... "

*Id.* at 1096 (quoting M.R.C.P. 20 cmt. (emphasis added)). The court then undertook to decide "where to draw the line with respect to what is considered 'the same transaction, occurrence, or series of transactions or occurrences,' " *id,* and held that to satisfy this requirement, there must be some "litigable event common to all the parties." [11]

■ The present case is obviously factually distinguishable from *Janssen.* However, in the court's opinion, the principles articulated by the court in *Janssen* foreclose any reasonable possibility that the claims of the plaintiffs against the agents in this case could be found to be properly

to Miss. R. Civ. P. 20. The Mississippi Supreme Court has noted that this more liberal attitude toward permissive joinder stems in part from the unavailability of class actions under the State's laws, and the desire to "better accommodate parties who are consequently shut out of the legal system." ... This situation presents a dilemma for a district court confronted with a removed case consisting of parties who are properly joined under Mississippi's Rule 20, but misjoined under that rule's federal counterpart.

**11.** Notably, on February 20, 2004, just a few days before the decision in *Janssen,* the Mississippi Supreme Court adopted amendments to Rules 20, 42 and 82 of the Mississippi

Rules of Civil Procedure that apply to cases filed on or after February 20, 2004. The substantive amendments to Rule 20 were not to the rule itself, but to the comments. Among other things, the court deleted the language referencing "the general philosophy" of allowing "virtually unlimited joinder at the pleading stage," and also deleted, *inter alia,* citations to *Comstock v. Rayford,* 9 Miss. 423, 438–39 (1843), and *Richardson v. Brooks,* 52 Miss. 118 (1876), which had previously been included in the comment for the proposition that "unconnected parties having a common interest in the point at issue may unite in the same bill". In addition, the court added a statement that "[t]he phrase 'transaction or occurrence' requires that there be a distinct litigable event linking the parties."

joined. One might gather from the complaint filed by plaintiffs in this case that they have identified an occurrence common to all plaintiffs inasmuch as they purport to assert similar claims relating to identical alleged wrongdoing by a common defendant, AMS. However, it becomes manifest from a review of the deposition testimony of James Reed, Dora Sumrall, Gloria O'Neal and Brett Whaley not only that these plaintiffs' actual grievances are not necessarily consistent with the allegations of the complaint, but also that their claims do not arise from the same transaction or occurrence as the claims of their co-plaintiffs. Although each of these plaintiffs purchased the same basic insurance policy, they all did so under different circumstances and with a different understanding of his or her policy based on allegedly different misrepresentations or omissions by different agents at different times. In effect, each insured-agent pair "presents a different set of factual issues" from the other, and from their co-plaintiffs who have not sued any agent. In short, this case is but a collection of unrelated plaintiffs suing over unconnected events.

█ The premise which underlies the concept of fraudulent misjoinder is that diverse defendants ought not be deprived of their right to a federal forum by such a contrivance as this. Accordingly, the court concludes that the claims of the James Reed, Thomas and Dora Sumrall,[12] Gloria O'Neal and Brett Whaley are fraudulently misjoined with the claims of the remaining

plaintiffs and that this misjoinder should not be allowed to deprive the diverse defendants of their right of removal; therefore, the claims of these plaintiffs will be severed and remanded, and the motion to remand denied as to the remaining plaintiffs.[13]

---

**12.** Although the parties have stipulated that the claims of Thomas Sumrall are not to be considered in the fraudulent joinder analysis, it would hardly be reasonable to conclude that Thomas Sumrall's claim is misjoined with his wife's claims arising from the purchase of a shared insurance policy.

**13.** As one court has observed,
Arguably a plaintiff's right to choose among defendants and claims—the principal rea-

son for imposing a strict standard of fraudulent joinder to effect removal—is not compromised where claims of co-plaintiffs are severed or dismissed. This is not to say the cost and efficiency benefits to joined plaintiffs are immaterial; they simply do not carry the same weight when balanced against the defendant's right to removal. *In re Rezulin Products Liability Litigation,* 168 F.Supp.2d 136, 147 (S.D.N.Y.2001).